In re EDWARD M. JOHNSON AND
ASSOCIATES, INC., Debtor.

John P. NEWTON, Jr., Trustee,
Plaintiff–Appellant,

v.

Edward M. JOHNSON,
Defendant–Appellee.

No. 86–6253.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 22, 1987.

Decided May 4, 1988.

Rehearing Denied July 19, 1988.

W. Morris Kizer, argued, Knoxville, Tenn., for plaintiff-appellant.

John W. Eilers, Jr., argued, Cincinnati, Ohio, for defendant-appellee.

Before LIVELY, and WELLFORD, Circuit Judges, and BROWN, Senior Circuit Judge.

BAILEY BROWN, Senior Circuit Judge.

Plaintiff–Appellant John P. Newton, Jr.,[1] Trustee for debtor Edward M. Johnson & Associates, Inc. ("J & A"), appeals the order of the district court reducing the amount awarded to the Trustee by the bankruptcy court in a proceeding brought by the Trustee against Edward M. Johnson

---

1. Leon Steinberg, Trustee, the original plaintiff in this action, died pending this appeal. Mr. Newton, the duly appointed and qualified suc-cessor trustee, was substituted as plaintiff pursuant to Rule 43(c) of the Federal Rules of Appellate Procedure.

("Johnson") under a contract in which Johnson, shortly prior to bankruptcy, sold all of the stock of J & A to Omni Communications, Inc. ("Omni"). The bankruptcy court held that J & A (and hence the Trustee) was an intended third party beneficiary to a provision in the stock sale contract whereby, the bankruptcy court determined, Johnson was bound to satisfy certain debt obligations of J & A. The district court held that, on the contrary, J & A was not an intended third party beneficiary. The bankruptcy court also held that the Trustee was entitled to avoid, as fraudulent transfers, the payment of certain funds of J & A to Johnson and the forgiveness of certain obligations of Johnson to J & A. The district court held that, while there had been fraudulent transfers, Johnson was entitled to an additional credit for earned and unpaid salary as an officer of J & A and, accordingly, so reduced the judgment. We conclude that the bankruptcy court was correct in holding that J & A was an intended third party beneficiary and therefore we reverse the district court's decision in that respect. However, we remand this aspect of the case for full adjudication by the bankruptcy court of Johnson's alleged failure of consideration defenses. With regard to the district court's holding that Johnson was entitled to an additional credit for unpaid salary, and thereby reducing the amount of the fraudulent transfers, we determine that the district court improperly made a factual finding when the bankruptcy court had made no finding and that the district court should have remanded for such a finding.

## I.

As of March, 1984, defendant, Johnson, was the president and sole shareholder of debtor, J & A. Johnson and Omni entered into a stock purchase agreement dated March 8, 1984, under which Omni agreed to purchase all of Johnson's stock in J & A. Johnson agreed that certain liabilities of J & A were paid in full through March 1, 1984. Omni agreed to pay Johnson, *inter alia*, a $200,000 cash down payment and $94,766.53 to be paid from J & A's bank accounts, and also agreed that Johnson would be released from liability on a loan from J & A. As part of the total payment to be made of $1,000,000, Johnson also was to receive percentages of the amounts collected on certain accounts owed to J & A.

An involuntary petition was commenced against J & A under Chapter 11 on May 15, 1984, and the petition was sustained. The present case is an adversarial action commenced on March 29, 1985, by the Trustee against Johnson for recovery under two theories. First, as the holder of J & A's contract rights under 11 U.S.C. § 541(a)(1), the Trustee alleged that J & A was a third party beneficiary of the stock purchase agreement, under which Johnson was obligated to pay $81,229.81 in debts owed by J & A to certain creditors. Second, pursuant to 11 U.S.C. § 548(a)(2), the Trustee sought to avoid allegedly fraudulent transfers made under the stock sale agreement in the amount of $154,350.80 for forgiveness of J & A's loan to Johnson and transfer of cash to Johnson from J & A's bank accounts.

The bankruptcy court held that J & A was an intended third party beneficiary under paragraph six of the stock purchase agreement, which provides:

EMJ [Johnson] covenants and agrees that all liabilities created by, or for which J & A is obligated, are paid in full through March 1, 1984, with the exception of pending litigation (except that mentioned in paragraph 3 above) and with the exception of disputed accounts payable ("disputed accounts payable" is one for which there is a legal basis to question J & A liability) which shall be addressed by EMJ and Omni with particular creditors on an individual basis. It is the intent of the parties that EMJ will attempt to negotiate, in cooperation with Omni, favorable settlements with creditors with outstanding balances due from, or obligated by, J & A on March 1, 1984. EMJ covenants he will act in good faith with all creditors and protect the good will of J & A and Omni with regard to the business and credit relationships of the two aforestated corporations. It is further excepted from any liability for which EMJ is obligated under this Agree-

ment any liability from [certain civil cases]. EMJ waives any right to any proceeds that may be derived by Omni from the aforestated lawsuits. This payment of current liabilities includes payment of all taxes, either known or unknown to J & A as of the date of execution of this Agreement.

Joint Appendix (App.) at 78–79.

Johnson testified that, under this paragraph, he assumed personal liability to pay certain accounts payable of J & A.

Q: You started off your answer by saying the purpose was to pay certain undisputed accounts payable. Did I understand you correctly?

A [Johnson]: Yes, sir.

Q: Who was going to pay those undisputed accounts payable?

A [Johnson]: I was.

Q: Personally?

A [Johnson]: Personally.

Q: You were agreeing to pay those, assume the liabilities for those, right?

A [Johnson]: That was the agreement that I had with Omni Communications.

App. at 103–04.

The bankruptcy court also particularly noted the testimony of Omni's president, Stanley G. Emert:

It was my intention, as well as the intention of Omni and J & A, that pursuant to paragraph six of the contract, Mr. Johnson promised to confer rights and benefits upon J & A by agreeing to pay the liabilities of J & A except for those liabilities excepted therein. Omni's purpose for obtaining this promise from Mr. Johnson is obvious. Omni, upon acquiring all of the stock of J & A, did not want to acquire ownership of a company burdened with substantial unpaid liabilities, and hence, it was Omni's intention to require, and in fact it did pursuant to the contract, require Mr. Johnson to promise to pay the liabilities of J & A, except those expressly excepted in paragraph six of the contract.

App. at 96–97. Emert further testified that it was Omni's intention to have Johnson pay J & A's debts primarily for J & A's benefit, "for it to be a clean company." App. at 99. The bankruptcy court concluded that Omni did intend to benefit J & A and that J & A had a right to performance of Johnson's promise to pay the debts because the "purpose of obtaining the promise was to wipe the slate clean for the *debtor* and to give the *debtor* a clean financial bill of health." App. at 48.

Contrary to Johnson's contentions, the bankruptcy court found no failure of consideration flowing from Onmi regarding the stock purchase agreement. Johnson pointed out that he had personally guaranteed the loan that Omni had obtained to pay Johnson the $200,000 down payment. The collateral was a $200,000 certificate of deposit, in Johnson's name, purchased from and deposited with the loaning bank. When Omni defaulted on the loan, Johnson's certificate of deposit was used to satisfy the debt. Thus, Johnson contends that he never effectively had the use of the $200,000 payment by Omni. The bankruptcy court held that the enforcement of the stock purchase agreement was not affected by Johnson's guaranteeing the loan, because the guaranty was outside the scope of the agreement, and therefore there was no failure of consideration. After addressing each claim against J & A, the court concluded that Johnson was liable under the contract to the Trustee for $81,229.81.

Respecting the allegedly fraudulent transfers, the bankruptcy court found that at the time of the $154,350.80 transfer to Johnson, which included funds from J & A's bank accounts and forgiveness of the J & A loan to Johnson, J & A was or thereby became insolvent. Therefore, the transfers were fraudulent unless reasonably equivalent value was given. The bankruptcy court held that Johnson gave reasonably equivalent value to the extent of $130,814.23: $100,000 for his 1983 unpaid salary as an executive of J & A and $30,814.23 used to reduce J & A's liability to a third party.[2] The court noted that Johnson had

---

**2.** The Trustee does not dispute the determination that Johnson gave reasonably equivalent value to this extent.

not been paid his agreed salary for 1983 nor for January 1 to March 8, 1984, but only discussed and awarded the $100,000 salary for 1983. Accordingly, the bankruptcy court found an avoidable fraudulent transfer in the amount of $23,536.57 ($154,-350.80 total transfer from J & A to Johnson minus $130,814.23 value given) plus prejudgment interest.

On appeal, the district court found no indication in the stock purchase agreement that the parties intended J & A to be an intended beneficiary of the promise by Johnson to pay J & A's debts. Rather, paragraph 6 was interpreted by the district court to

> clearly be a warranty by Mr. Johnson to Omni that, with certain exceptions, the corporation's liabilities would be paid in full. It thus appears to be the type of clause that would be negotiated for by a buyer for the buyer's benefit. I find nothing in Paragraph 6 or elsewhere in the agreement which evidences an intent to confer a benefit on the corporation itself. Nor is there any other evidence in the record, written or oral, which demonstrates an intent to confer a third party donee beneficiary status upon the debtor.

App. at 70 (Memorandum of District Court).[3] Therefore, the district court reversed the bankruptcy court's award of $81,229.81 to the Trustee, holding that J & A was not an intended third party beneficiary. Thus, the district court never reached Johnson's failure of consideration defenses.

Regarding the fraudulent transfer claim, the district court allowed an additional credit for Johnson in the amount of $18,-817.20 for unpaid salary due him for 1984, thereby reducing the total award to $4,719.37. The district judge found that:

> The evidence was uncontradicted at trial that Mr. Johnson continued in his job as executive officer of the debtor during the first two months and eight days of 1984. There is nothing in the record to indicate

that Mr. Johnson's job duties changed any from 1983 to January and February of 1984. The trustee contends that Mr. Johnson was attempting to find a buyer for the corporation during that period. However, the trustee presented no evidence to indicate that Mr. Johnson no longer continued to perform the same duties and functions as executive officer that he had performed in 1983. The Court is of the opinion that Mr. Johnson should be given credit for $18,817.20 of salary earned during 1984 just as he was given credit for the salary earned during 1983. Though this was a factual determination made by the Bankruptcy Court, there is nothing in the record to warrant treating Mr. Johnson's salary differently in early 1984 than in 1983. It is probable that this was simply an oversight by the Bankruptcy Court since the 1984 salary is not mentioned in the opinion while the 1983 salary is mentioned.

App. at 71–72.

## II.

■ We agree with Johnson that interpretation of the stock sale agreement is a question of law and that, therefore, the review of the decision of the bankruptcy court and of the district court by this court is *de novo. See Ragsdale v. Haller*, 780 F.2d 794, 795 (9th Cir.1986); *Wegner v. Grunewaldt*, 821 F.2d 1317, 1320 (8th Cir. 1987). Since the contract was made in Tennessee and all other contacts are with Tennessee, the parties agree that the effect of the provision requiring Johnson to pay J & A's debts is to be determined by the law of Tennessee.

Preliminarily, we point out that there is a difference in the terminology between the *Restatement of Contracts* and the *Restatement (Second) of Contracts* with respect to third party beneficiaries. In the former, the dichotomy is between, on the one hand, creditor and donee beneficiaries, who have

---

3. As has been seen, the district court construed Johnson's agreement to the effect that liabilities of J & A, as of March 1, 1984, *would be* paid. Johnson appears to agree with this interpretation. So also did the bankruptcy judge. Ac-

cordingly, we need not deal with the problem that would have been presented if Johnson's commitment were only that the liabilities *had been* paid.

enforceable rights, and, on the other hand, an incidental beneficiary, who has no such rights. In the latter, the dichotomy is between intended beneficiaries, who have enforceable rights, and incidental beneficiaries, who have no such rights. Under both versions of the *Restatement*[4] a third party is a donee or intended beneficiary if the parties to the contract intend to bestow a benefit on that party. This is also the law of Tennessee. *See, e.g., Eidson v. Hardware Mut. Casualty Co.,* 191 Tenn. 430, 234 S.W.2d 836 (1950); *Willard v. Claborn,* 220 Tenn. 501, 419 S.W.2d 168 (1967). *See also Moore Constr. v. Clarksville Dept. of Elec.,* 707 S.W.2d 1 (Tenn.Ct. App.1985) (discussing both *Restatements of Contracts* and Tennessee cases citing to them).

The bankruptcy judge pointed out that while Omni would benefit indirectly, as sole stockholder of J & A, from Johnson's satisfaction of liabilities of J & A, the obvious purpose in obtaining Johnson's promise was to wipe the slate clean for J & A. We also think that it is important, in determining whether J & A was an intended beneficiary, that this promise was part of a commercial transaction in which Omni was purchasing all the stock of a going corporate business, which Omni apparently intended to continue.

Moreover, as has been seen from the testimony of Emert, president of Omni, the very purpose of the provision requiring Johnson to satisfy the liabilities of J & A was for Johnson to "confer rights and benefits upon J & A." Johnson's testimony was consistent with Emert's on this point in that he testified that he intended to personally pay the liabilities.

Johnson not only undertook to personally pay certain of J & A's liabilities, but made additional promises that manifest an intent to benefit J & A. Paragraph six of the contract also states that it was the parties' intent that Johnson would attempt to negotiate favorable settlements with J & A's other creditors, whose claims were in dispute, and that Johnson would act in good faith with all creditors and protect J & A's good will.

█ Therefore, we conclude that the bankruptcy court was correct in its interpretation that J & A was an intended third party beneficiary. However, Johnson argues that even if J & A was an intended beneficiary, the promise is unenforceable because of the defense of failure of consideration. The rights of a third party beneficiary are subject to the defenses that arise out of the contract between the promisor and the promisee. *Fulmer v. Goldfarb,* 171 Tenn. 218, 101 S.W.2d 1108 (1937). As an affirmative defense, Johnson carries the burden of proof in showing failure of consideration. *Pinney v. Tarpley,* 686 S.W.2d 574 (Tenn.Ct.App.1984).

**4.** Section 133 of the *Restatement of Contracts* (1932) states:
(1) Where performance of a promise in a contract will benefit a person other than the promisee, that person is …
(a) A donee beneficiary if it appears from the terms of the promise in view of the accompanying circumstances that the purpose of the promisee in obtaining the promise of all or part of the performance thereof is to make a gift to the beneficiary or to confer upon him a right against the promisor to some performance neither due nor supposed or asserted to be due from the promisee to the beneficiary;
(b) a creditor beneficiary if no purpose to make a gift appears from the terms of the promise in view of the accompanying circumstances and performance of the promise will satisfy an actual or supposed or asserted duty of the promisee to the beneficiary …;

(c) an incidental beneficiary if neither the facts stated in Clause (a) nor those stated in Clause (b) exist.
Section 302 of the *Restatement (Second) of Contracts* (1981) states:
(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

■ Johnson's first failure of consideration argument was that he never obtained use of the $200,000 down payment. Omni borrowed the funds for this payment to Johnson from a bank that required Johnson to secure his guaranty of the loan with a $200,000 certificate of deposit, which was cancelled in satisfaction of Johnson's guaranty when Omni did not pay the loan. This claim was rejected by the bankruptcy judge, and we likewise reject it for the reason that the bankruptcy judge stated, which was that Johnson's furnishing security for Omni's loan from the bank was the result of an agreement made outside the scope of the stock purchase agreement.

Also at trial, Johnson presented evidence and asserted in his proposed findings that he received only a part of the amount specified in the contract that was to come from J & A's bank accounts. Before the bankruptcy court judge, however, Johnson failed to frame explicitly this discrepancy as a failure of consideration argument, and so the bankruptcy judge did not address it as such. Although the bankruptcy court found that Johnson received the alleged lesser amount, the court only considered this evidence in its determination of the amount of the fraudulent transfer from J & A to Johnson. The bankruptcy court did not determine the amount to which, under the contract, Johnson was entitled,[5] and accordingly did not determine whether there was failure of consideration as to the amount claimed by Johnson. On appeal before the district court, Johnson did expressly present this issue, but it was never reached by the district court because of its determination that J & A was not an intended beneficiary of the contract. We remand this failure of consideration question to the district court for remand for determination by the bankruptcy court.

Finally, Johnson argued in the bankruptcy court failure of consideration because he never received any moneys from the collections by Omni of J & A's accounts receivable. Evidence at trial showed that Omni had collected over $25,000 on such accounts during March 1984, and Trustee's counsel stated that to his knowledge no moneys had been paid to Johnson under this provision of the contract. Although presented at trial and on appeal, the bankruptcy court failed to address this issue and the district court did not reach it. Resolution of Johnson's contention may involve the interpretation and reformation of paragraphs 3.e., 3.f., and 3.g. of the contract.[6] Therefore, this issue must be remanded to the district court for remand to the bankruptcy court for determination.

### III.

■ Findings of fact by a bankruptcy court shall not be set aside unless clearly erroneous. Bankruptcy Rule 8013; *see also* Bankruptcy Rule 7052 (Federal Rule

---

5. The contract provides in this respect: "3. Omni shall: ... b. pay additionally EMJ [Johnson] upon closing the amount of $94,766.53. This amount to be paid by Omni to be paid from three accounts of J & A, which accounts Omni shall cause J & A to execute proper documents to release any interest in the accounts." (Underlined amount handwritten in blank on typewritten contract.) The bankruptcy court found that Johnson received $57,611.80; this included $53,171.74 transfered from J & A's savings account and $4,440.06 transfered from J & A's checking account. The bankruptcy court will, of course, have to determine whether Johnson was entitled to receive $94,766.53 or whether he was entitled to receive whatever amounts were in the bank accounts.

6. These paragraphs provide:
   3. Omni shall:

   .    .    .    .    .

e. subsequent [subject?] to the provisions of paragraph 4(g) below, pay EMJ [Johnson] an amount equal to 20% of the amounts collected for accounts entitled work in progress (work in progress is defined as those services ordered but as of yet not filed with the FCC) and attached on Exhibit B.

f. pay EMJ an amount equal to 40% of the amounts collected for accounts entitled accounts receivable (accounts receivable is defined as those accounts receivable not entitled work in progress or cellular radio) and attached on Exhibit C.

g. the payment to be made in paragraph 4(e) and 4(c) above shall be made by Omni to EMJ only after the sum of $200,000.00 is collected by Omni to be applied to EMJ from the aforenoted paragraphs.

There are no paragraphs numbered 4(e), 4(c), or 4(g), and such references may have been intended to apply to 3.e., 3.f., and 3.g., respectively.

of Civil Procedure 52 applies in adversary bankruptcy proceedings). This circuit has clearly enunciated that findings of fact of a bankruptcy court should not be disturbed by the district court judge unless there is "most cogent evidence of mistake or miscarriage of justice." *Slodov v. United States*, 552 F.2d 159, 162 (6th Cir.1977) (quoting *McDowell v. John Deere Indus. Equip. Co.*, 461 F.2d 48, 50 (6th Cir.1972)), *rev'd on other grounds*, 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978).

The bankruptcy court determined that Johnson was entitled to $100,000 in salary for 1983 and held that, in connection with the fraudulent transfer issue, the amount constituted reasonably equivalent value. Although the bankruptcy court acknowledged that Johnson had not been paid salary for the period from January 1 to March 8, 1984, the court did not discuss or make a finding as to Johnson's entitlement to salary for this period. The district court reversed the bankruptcy court with respect to the salary entitlement for 1984, but did not find that a factual determination by the bankruptcy court was "clearly erroneous." Rather, the district court opined that an oversight by the bankruptcy court had occurred.

As an appellate court in this proceeding, the district court

> may not make its own independent factual findings. If the bankruptcy court's factual findings are silent or ambiguous as to an outcome determinative factual question, the district court may not engage in its own factfinding but, instead, must remand the case to the bankruptcy court for the necessary factual determination. *E.g. In re Walker*, 726 F.2d 452, 454–55 (8th Cir.1984); *In re Neis*, 723 F.2d 584, 588–90 (7th Cir.1983).

*Wegner v. Grunewaldt*, 821 F.2d 1317, 1320 (8th Cir.1987).

Since the bankruptcy court did not make a factual finding as to whether Johnson was entitled to any salary from J & A for 1984, it was inappropriate for the district court to determine this in the first instance. The record evidence on this issue "is subject to differing interpretations and the findings of the bankruptcy court, as indicated, are not presently acceptable as decisive of the basic issue." *In re Walker*, 726 F.2d 452, 454 (8th Cir.1984). Accordingly, we must reverse the district court on this issue and remand to that court with instructions to remand to the bankruptcy court for additional findings of fact and conclusions of law.

The judgment of the district court is REVERSED and the cause is REMANDED for further proceedings not inconsistent with this opinion.