982 F.2d 945
 Bankr. L. Rep. P 75,059
In re: H.J. SCHEIRICH COMPANY, Debtor.
Thomas A. DUDDY, Trustee for the Estate of H.J. Scheirich
Company, Plaintiff-Appellee,
v.
KITCHEN & BATH DISTRIBUTORS, INC.; Glen N. Garner; Susan
N. Garner; Ernest Negrin; Jean T. Negrin,
Defendants-Appellants.
 No. 92-5428.
 United States Court of Appeals,
Sixth Circuit.
 Argued Nov. 9, 1992.
Decided Jan. 5, 1993.
 
 Judith B. Hoge (argued), [COR NTC ret], Mark J. Sandlin, Jr. (briefed), [COR NTC ret], Morgan & Pottinger, Louisville, KY, for plaintiff-appellee.
 David M. Cantor (argued and briefed), [COR NTC ret], Seiller & Handmaker, Louisville, KY, for defendants-appellants.
 Before KEITH and NELSON, Circuit Judges; and LIVELY, Senior Circuit Judge.
 LIVELY, Senior Circuit Judge.
 
 
 1
 This is an appeal from an order of the district court affirming the bankruptcy court's entry of judgment for the trustee and its dismissal of the creditor's counterclaim. Appellee Thomas Duddy, trustee in bankruptcy for H.J. Scheirich Company filed a complaint in an adversary proceeding in the U.S. Bankruptcy Court on November 8, 1990, for payment of money past due and owing for goods ordered by and delivered to appellant, Kitchen & Bath Distributors, Inc. Kitchen & Bath stipulated the trustee's case and conceded that it owed $30,603.81, but filed affirmative defenses of failure of consideration, set-off and estoppel and a counterclaim for breach of contract.
 
 
 2
 The bankruptcy court found that Kitchen & Bath failed to sustain its burden of establishing its claims by a preponderance of the evidence, and dismissed the counterclaim. The district court affirmed, finding no clear error in the bankruptcy court's findings of fact or its determination not to credit the testimony of Kitchen & Bath's president.
 
 I.
 A.
 
 3
 Beginning in 1987, H.J. Scheirich Company, a Louisville, Kentucky manufacturer of cabinets for kitchens and bathrooms began supplying inventory to Kitchen & Bath Distributors, Inc., a Virginia corporation doing business in Fredericksburg, Virginia. Kitchen & Bath was primarily a wholesale distributor to builders, although it very occasionally supplied cabinets to homeowners. In September 1988, when Kitchen & Bath's total inventory was between $65,000 and $85,000, Scheirich and Kitchen & Bath entered into a "Key Distributor Agreement" wherein Kitchen & Bath agreed to carry only the Scheirich line of cabinets and to purchase at least "one of everything." There was testimony that after the agreement, Kitchen & Bath at one point maintained approximately $300,000 of Scheirich inventory.
 
 
 4
 Scheirich petitioned the bankruptcy court for relief under Chapter 11 on February 20, 1990. In the period thereafter, Scheirich in newsletters encouraged its customers to continue to buy its products and assured them that the reorganization was progressing satisfactorily. Kitchen & Bath alleges it was in frequent contact with Scheirich for the first few months after the petition was filed and received assurances that Scheirich would continue to fill orders. Kitchen & Bath ordered a total of over $95,000 worth of inventory from Scheirich subsequent to Scheirich's filing the petition under Chapter 11. Following conversion of Scheirich's case to a Chapter 7 proceeding, Thomas Duddy was appointed trustee. The unpaid balance of these orders was the subject of Duddy's complaint.
 
 
 5
 On July 17, 1990, Kitchen & Bath placed two orders totalling $50,000. Scheirich failed to deliver either of these shipments, whereupon Kitchen & Bath on September 20, 1990, notified Scheirich by letter that it was holding Scheirich in breach and intended to "cover" in order to mitigate its losses. The non-delivery of the July 17 orders was the primary subject of the counterclaim. Kitchen & Bath maintained that the orders were for pre-sold jobs and it risked losing important accounts had it failed to deliver the cabinets to its customers. Kitchen & Bath contends it covered, buying replacement goods on the open market at considerable expense. In addition, when Scheirich failed to deliver on a July 26, 1990 order pre-sold to its customer Dobyns, Kitchen & Bath claimed it lost the sale.
 
 
 6
 Moreover, Kitchen & Bath asserted that pursuant to a separate oral agreement, Scheirich, unable to deliver a new inexpensive line of cabinets, instructed Kitchen & Bath to use a higher priced existing inventory for the job and Scheirich would rebate to Kitchen & Bath the difference between the cost of the more expensive cabinets and the cost of the cheaper line. Scheirich never rebated the price difference. Finally, Kitchen & Bath claimed that due to Scheirich's failure to supply cabinets, it was left with "dead inventory" of approximately $100,000 now virtually worthless because the inventory constituted only partial units, of no use without the additional shipments. The total amount counterclaimed was $175,097.19.
 
 B.
 
 7
 After hearing testimony of the only witness, Glen Garner, President of Kitchen & Bath, the court ruled that Kitchen & Bath failed to sustain its burden of showing by a preponderance of the evidence that non-delivery caused it loss. The court held that the newsletters from Scheirich assuring its customers of its stability fell short of misrepresentation. The court found it difficult to believe that the $95,000 worth of goods ordered post-petition were all incomplete cabinets and no full sets, given that Kitchen & Bath's entire inventory when it signed the "Key Distributor Agreement" was less than $95,000.
 
 
 8
 The bankruptcy court ruled that Kitchen & Bath's account was past due when it ordered the cabinets for the Dobyns job, thus Scheirich was justified in not making that delivery. Finally, the court said that Kitchen & Bath's evidence of specific losses fell short of proof sufficient to sustain a claim, as Garner repeatedly used words like "approximately," "about" and "estimated."
 
 
 9
 On appeal, the district court affirmed the bankruptcy court's ruling, finding that Kitchen & Bath failed to substantiate the existence of pre-sold jobs. While it did present receipts from other wholesalers for goods it claimed were necessary to cover the pre-sold jobs, there was no evidence the goods were pre-sold. The court deferred to the bankruptcy court which had heard the testimony, observed witness demeanor, reviewed the documents and chosen to not believe the testimony. The court found no evidence that the findings were clearly erroneous.
 
 
 10
 The district court also found no clear error in the court's determination that Scheirich made no misrepresentation in its newsletters. Kitchen & Bath provided no documentation supporting its claim that it filed requests for rebates with Scheirich. Although Kitchen & Bath offered documents showing sales of goods to builders, it provided no evidence substantiating an agreement with Scheirich for Scheirich to rebate the difference in price between goods in stock and less expensive goods Scheirich was unable to deliver. Thus, the district court concluded that the bankruptcy court, having the opportunity to hear evidence, observe the demeanor of the witness and review documents, chose to disbelieve the testimony of Garner. Without more, the factual findings could not be held to be clearly erroneous.
 
 II.
 
 11
 We consider briefly the parties' arguments before this court and recite familiar law relating to appellate review under the "clearly erroneous" standard.
 
 A.
 
 12
 Kitchen & Bath argues that the bankruptcy court's findings were clearly erroneous because it was not refuted that (1) appellant continued to order goods from Scheirich based on Scheirich's representations that it would deliver on the orders, (2) most of the appellant's orders were to satisfy pre-sold jobs, and (3) appellant suffered damages from Scheirich's failure to deliver the goods. In addition to detailing legal arguments for relief under the Uniform Commercial Code (UCC) for seller's breach and buyer's damages, Kitchen & Bath seeks damages for Scheirich's failure to reimburse Kitchen & Bath for the cost difference between Kitchen & Bath's inventory and the new line Scheirich could not deliver and for Scheirich's failure to deliver goods, which rendered appellant's inventory worthless. Finally, Kitchen & Bath argues that Scheirich is estopped from seeking payment of the past due bill because of its misrepresentations that it would be able to deliver goods and appellant's detrimental reliance on those representations. Kitchen & Bath, alternatively, asks that the two parties' damages be set-off.
 
 
 13
 The trustee asserts that the district court was correct in holding that the bankruptcy court's decision was not clearly erroneous but was reasonable and supported by the court's discretion to observe the demeanor of the witnesses, the absence of documentary evidence that the losses on specific orders were for "pre-sold jobs," and the absence of documentary evidence of Scheirich's agreement to reimburse Kitchen & Bath on the less expensive line of cabinets. Because Kitchen & Bath has pointed to nothing showing the court was clearly erroneous, Duddy contends that the decision should be affirmed.B.
 
 
 14
 A district court reviewing a bankruptcy court's decision in a "core proceeding" functions as an appellate court, applying the standards of review normally applied by federal appellate courts. According to Fed.R. of Bankr.P. 8013, the bankruptcy court is the factfinder and
 
 
 15
 [f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the Bankruptcy Court to judge the credibility of witnesses.
 
 
 16
 This rule mirrors Fed.R.Civ.P. 52(a), which sets forth the standard of review for courts of appeal reviewing findings of fact by district courts.
 
 
 17
 In Anderson v. City of Bessemer, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985), the Supreme Court said in regard to a federal appellate court's review of a district court: "a 'finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). The Court made clear that this standard does not permit a reviewing court to reverse the trial court's findings of fact merely because it would have reached a different conclusion. Id. As long as the trial court's findings are "reasonable and supported by the evidence," they may not be overturned. In re Southern Indus. Banking Corp., 809 F.2d 329 (6th Cir.1987) (citation omitted). Absent the " 'most cogent evidence of mistake or miscarriage of justice' " a bankruptcy court's findings will not be disturbed. In re Edward M. Johnson and Assoc., Inc. (Newton v. Johnson), 845 F.2d 1395, 1401 (6th Cir.1988) (quoting Slodov v. United States, 552 F.2d 159, 162 (6th Cir.1977) (citation omitted)).
 
 
 18
 A reviewing court is not entitled to review findings of fact de novo, Anderson, 470 U.S. at 573, 105 S.Ct. at 1511 (citation omitted), and when there are two permissible views of the evidence, the court may not hold that the trial court's findings are clearly erroneous. Id. at 574, 105 S.Ct. at 1511-12 (citations omitted). This is true when the court's findings are based on physical or documentary evidence. Id. Although factual findings based on credibility determinations warrant even greater deference, id. at 575, 105 S.Ct. at 1512, a "trial judge may [not] insulate his findings from review by denominating them credibility determinations...." Id. The reviewing court may determine that the "story" is "so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it." Id. While a factfinder who does not believe the testimony "may simply disregard it," the unbelieved testimony is usually not considered sufficient grounds for drawing the opposite conclusion. Bose Corp. v. Consumers Union of United States, Inc., 466 U.S. 485, 512, 104 S.Ct. 1949, 1966, 80 L.Ed.2d 502 (1984).
 
 III.
 A.
 
 19
 The bankruptcy court's finding that the assurances in Scheirich's newsletters during the Chapter 11 period fell short of misrepresentation is not clearly erroneous. Similarly, the bankruptcy court did not commit clear error in rejecting Kitchen & Bath's claim of a separate oral agreement to rebate the difference between the cheaper line ordered by Kitchen & Bath and the more expensive line allegedly used on a job at Scheirich's direction. Furthermore, the finding that Kitchen & Bath failed to establish damages because of "dead inventory" is not clearly erroneous. Although Glen Garner attempted to assert all of these claims, his testimony was imprecise and totally without documentary support.
 
 B.
 
 20
 With respect to the July 17, 1990 orders, and the "Dobyns Job" order of July 26, however, we conclude that the bankruptcy court committed clear error. We sympathize with the bankruptcy court; Kitchen & Bath did not present its case in a clear and orderly way and many of the documents it filed were unrelated to the determinative issues. Nevertheless, after careful examination of the record, we are "left with the definite and firm conviction that a mistake has been committed." See United States v. United States Gypsum Co., 333 U.S. at 395, 68 S.Ct. at 542. To us, the evidence of mistake and possible miscarriage of justice is "most cogent." See In re Edward M. Johnson and Assoc., Inc., 845 F.2d at 1401.
 
 
 21
 Glen Garner testified that Kitchen & Bath placed two orders on July 17, 1990, totalling approximately $50,000 that were never delivered. The two orders consisted of invoice numbers 8567 through 8571 (100 items) and numbers 8579 through 8582 (92 items). He testified that all items were for pre-sold jobs and that Scheirich's failure to deliver the merchandise resulted in losses for additional costs to cover, for additional freight charges and for other expenses. The bankruptcy court appears to have found that these claims lacked documentation. The record appears otherwise to us.
 
 
 22
 Kitchen & Bath filed as exhibits Scheirich's acknowledgements of these orders. The acknowledgements of the July 17 orders show the invoice numbers, catalogue numbers, quantity and description of more than 190 items. In addition to acknowledging these orders, the documents show an approximate shipping date of August 10, 1990. Further, when Kitchen & Bath did not receive these orders, Glen Garner wrote Scheirich on September 20, 1990, identifying the orders by invoice numbers and claiming a breach of contract. The letter further advised Scheirich that its breach had caused Kitchen & Bath to default on delivery under contracts with its customers, and that Kitchen & Bath was now seeking to "cover" by obtaining substitute goods.
 
 
 23
 The documentary support with respect to Garner's testimony about the Dobyns order of July 26 is even stronger. Scheirich's acknowledgement of the July 26 order identifies it as the "Dobyns Job" and sets an approximate delivery date of August 19. It seems clear that this order was pre-sold merchandise, and there is no contradiction to Garner's testimony that Kitchen & Bath suffered losses as a result of the non-delivery.
 
 
 24
 Kitchen & Bath's proof that part of the July 17 order was pre-sold or required to fill out its inventory is more problematic. Nevertheless, there is documentary evidence of purchases by Kitchen & Bath of merchandise similar to some of the items included in the July 17 orders in the period following Scheirich's failure to deliver those orders. Furthermore, the letter of September 20, 1990, to which Scheirich made no response, specifically identified the July 17 orders and put Scheirich on notice that Kitchen & Bath was claiming damages for the cost of "cover" and dead inventory. Without any countervailing evidence, either testimonial or documentary, the bankruptcy judge was not free to reject Kitchen & Bath's claim out of hand.
 
 
 25
 The bankruptcy court may have been misled by the trustee's answer to a question in Kitchen & Bath's first set of interrogatories. Question 7 and the trustee's answer were as follows:
 
 
 26
 7. State the date that the Plaintiff received order numbers 8567-71 and 8579-82. Attach to your answers a copy of the purchase orders.
 
 
 27
 ANSWER: According to the records of the H.J. Scheirich Company in possession of the Trustee, the H.J. Scheirich Company never received these orders from the Defendant.
 
 
 28
 These are the very July 17 orders that the record clearly shows Scheirich received and acknowledged and for which it set an approximate shipping date. Regardless of whether these orders were pre-sold, the record discloses an order, an acknowledgement and a date of shipment. At this point there was a contract between the parties.
 
 IV.
 
 29
 Scheirich never indicated that acceptance of the orders and shipment were conditional upon the payment in full of Kitchen & Bath's account. Neither the acknowledgement forms nor any other documents in evidence so limited Kitchen & Bath's right to receive the ordered merchandise. Yet, apparently as an alternate ground for dismissing the counterclaim, after finding that Kitchen & Bath had failed to prove that the merchandise was "for specific orders," the bankruptcy court stated:
 
 
 30
 K & B did discuss the Dobyns order. However, when K & B placed that order, it had already accumulated a $30,000.00 delinquent balance. We harbor little doubt that even if HJS had not suffered the crippling blow delivered by the strike, it would justifiably have not delivered the Dobyns order or any other order of July 17 until K & B paid the $30,000.00 past due balance.
 
 
 31
 At oral argument counsel for the trustee sought to bolster this conclusion by reference to the UCC, as adopted by Chapter 355 of Kentucky Revised Statutes (KRS) (Baldwin 1990). The basic seller-buyer provision is found in KRS 355.2-301:
 
 
 32
 The obligation of the seller is to transfer and deliver and that of the buyer is to accept and pay in accordance with the contract.
 
 
 33
 Under KRS 355.2-609, a seller with "reasonable grounds for insecurity" with respect to a buyer's performance has the right to suspend its own performance until receiving adequate assurances from the buyer. This right is conditioned, however, upon the seller's making a demand for assurances "in writing." There is no evidence in the record of such a writing.
 
 
 34
 A seller may also withhold delivery under KRS 355.2-703(a) if the buyer "fails to make a payment due on or before delivery." This section does not apply to the present case, however, because both July 17 orders and the Dobyns orders were accepted by Scheirich as follows: "Terms 2% 15 Days Net 30."
 
 
 35
 On the other hand, where a seller fails to make delivery, a buyer may " 'cover' and have damages ... as to all the goods affected whether or not they have been identified to the contract...." KRS 355.2-711(1)(a). There was no showing of a "course of performance" between these parties, who had an ongoing seller-buyer relationship, under which the seller withheld delivery of acknowledged orders when the buyer was in arrears on earlier orders. See KRS 355.2-208 (A "course of performance accepted or acquiesced in without objection" to be considered in determining meaning of an agreement). Nothing in this record supports the conclusion that Scheirich had a legal right to withhold delivery of these orders, which it accepted without conditions and subject to future payment, for the reason that Kitchen & Bath had an unpaid account for earlier orders.
 
 CONCLUSION
 
 36
 We make no findings, except to the extent of pointing out those findings of the trial court that are clearly erroneous. The bankruptcy court committed clear error in finding that Kitchen & Bath provided no documentary support for Glen Garner's testimony. The bankruptcy court also erred in holding, without any demonstration of a course of performance or other evidence of such an agreement, that Scheirich was legally entitled to withhold delivery of the July 17 and 26 orders so long as Kitchen & Bath owed for earlier orders. Upon remand the bankruptcy court will reconsider its denial of Kitchen & Bath's claim of set-off and counterclaim in light of our determinations.
 
 
 37
 The judgment is reversed and the case is remanded to the district court with directions to remand it to the bankruptcy court for further proceedings in accordance with this opinion.