NOT RECOMMENDED FOR PUBLICATION
File Name: 19a0627n.06

No. 18-4087

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| JAMES L. WRIGHT, | ) | SOUTHERN DISTICT OF |
| | ) | OHIO |
| Defendant-Appellant. | ) | |
| | ) | |

FILED

Dec 19, 2019
DEBORAH S. HUNT, Clerk

BEFORE:     BOGGS, SUHRHEINRICH, and WHITE, Circuit Judges.

SUHRHEINRICH, Circuit Judge.  This is the second time that James Wright has attempted to conceal income from the United States government.[1]  In this instance, Wright underreported his income by claiming improper deductions to a subchapter S-corporation and engaged in self-dealing with a private foundation to pay for his children's tuition.  A jury convicted Wright of seven counts of filing, or aiding in the filing of, false tax returns in violation of 26 U.S.C. § 7206. The district court sentenced Wright to 33 months in prison and ordered him to pay $146,404 in restitution.  Wright appeals, alleging that the district court abused its discretion by refusing to give a jury instruction on good-faith reliance on accountants and lawyers.  Wright also challenges the procedural reasonableness of his sentence, asserting that the district court improperly calculated the amount of loss stemming from the false tax returns.  We **AFFIRM**.

---

[1] In 1998, Wright pleaded guilty to tax evasion for using trusts to conceal insurance-commission income. *United States v. Wright*, No. 97-cr-64 (S.D. Ohio).

## I.

## A.

Wright comes from a successful family. His great-grandmother founded the B&P Company (B&P) in 1889. B&P sells anti-aging and beauty products under the brand Frownies. B&P passed in a matrilineal fashion between generations and eventually went to Wright's mother, Margaret. Wright does not have any sisters so, in the late 1990s, the business passed from his mother to Wright and his wife, Kathy. Even though his mother no longer had a connection to the business, B&P continued to pay, at Wright's direction, the rent and utilities for Margaret's condo while claiming the payments as a business expense on its taxes.

Wright created Remnant, a subchapter S corporation, which was then used to manage B&P. Before B&P passed to Wright, Margaret signed a one-page contract allowing Remnant to manage B&P. The contract states only that "Remnant agrees to manage B&P Company, Inc. sales, personnel, and offices for an undisclosed period of time" and that "[a]s officer of the Remnant[,] James L/ [sic] Wright is authorized to sign contracts with employees, vendors, sales representatives, and brokers upon approval of company lawyers." B&P did not pay Wright a salary directly. Instead, B&P paid more than $600,000 as a "management fee" to Remnant between 2006 and 2010. Remnant, in turn, paid Wright and his wife a salary. Remnant also paid a salary of up to $28,000 to each of Wright's children, even though they were in high school or university at the time.

Wright also created the Wright Family Limited Partnership (FLP). Wright caused FLP to purchase a house and made it his family residence. FLP leased the house to Remnant. Remnant paid the utilities and maintenance on the family home.

Finally, in 2002, Wright founded the Wright Family Foundation, a non-profit with the stated purpose of supporting church missions. The next year, Wright changed the name to Fore Fathers Foundation. B&P paid $118,850 to Fore Fathers between 2006 and 2009. At Wright's direction, Fore Fathers Foundation paid for his children's tuition.

**B.**

The IRS began an audit of B&P in 2010. Following the audit, a grand jury returned an eight-count indictment against Wright. Count One charged Wright with engaging in a corrupt endeavor to obstruct and impede the administration of the internal revenue laws, in violation of 26 U.S.C. § 7212(a). Counts Two through Eight charged Wright with filing, or aiding and assisting the filing of, false tax returns, in violation of 26 U.S.C. § 7206. Counts Two and Three concerned improper rent deductions in the tax filings for B&P Company for tax years 2008 and 2009, respectively. Counts Four and Five concerned improper reimbursement of family education expenses in the tax filings for Fore Fathers Foundation for tax years 2008 and 2009, respectively. Counts Six, Seven, and Eight concerned underreported income in Wright's personal tax filings for tax years 2008, 2009, and 2010, respectively.

After a two-week trial, the jury found Wright not guilty on the obstruction charge (Count One) and guilty on the seven false-tax-return charges (Counts Two through Eight). Wright appeals.

**II.**

**A.**

Wright asserts that the district court should have given a good-faith-reliance instruction to the jury. A "district court's refusal to give a requested jury instruction is reviewed for an abuse of discretion." *United States v. Lawrence*, 735 F.3d 385, 428 (6th Cir. 2013). A district court should

not give a jury instruction "which lacks evidentiary support or is based on speculation." *United States v. Morgan*, 216 F.3d 557, 566 (6th Cir. 2000) (citation omitted). A reliance defense requires proof that defendant (1) fully disclosed all pertinent facts, and (2) relied in good faith on the accountant's or lawyer's advice. *United States v. Lindo*, 18 F.3d 353, 356 (6th Cir. 1994); *United States v. Duncan*, 850 F.2d 1104, 1116 (6th Cir. 1988), *abrogated on other grounds by Schad v. Arizona*, 501 U.S. 624 (1991). The district court refused to give the instruction because Wright did not fully disclose all relevant information to his attorneys and accountants. The record evidence easily supports the district court's decision.

*B&P's 2008 and 2009 Tax Returns*. On B&P's 2008 and 2009 Form 1120, B&P inappropriately claimed rent and utilities deductions for Margaret Wright's personal residence. Accountant Julie Buschur from Hammerman, Graf, Hughes and Co. (HGH) testified that HGH prepared B&P's tax returns for 2008 and 2009. Buschur testified that the only information HGH received from B&P regarding the rental payments was a note stating "[r]ental expense is the rent expense for the building leased from the LLC." Buschur testified that a staff accountant from HGH "would have taken that information and put it into our software and then made any entries into our software that were necessary, and then it's just basically imported into the tax return." Buschur testified that she was not aware that the rent and utilities payments listed on B&P's 2008 and 2009 returns included rent and utilities for Margaret Wright's apartment. Buschur testified that if HGH had known that Margaret Wright's personal rent was included in B&P's rent expenses, "they would not have coded it to rent expense" and "would not take a personal expense as a deduction."

*Wright's 2008, 2009, and 2010 Personal Tax Returns*. Wright self-prepared his own 2008, 2009, and 2010 joint personal tax returns, so no jury instruction would have applied to these counts.

*Fore Fathers Foundation's 2008 and 2009 Form 990-PF*.  Attorney Jeffrey Dundon testified that he helped Wright form the Wright Family Foundation, which later became the Fore Fathers Foundation.  According to Dundon, Wright told him that the Fore Fathers Foundation was to be "a vehicle where [Wright] could continue to make use to support churches and other functions in the missionary work and outreach work."  Dundon and Wright discussed whether Wright could make a deductible contribution to the Fore Fathers Foundation to be used to pay for his daughter's mission trip.  Dundon testified that he told Wright about a private ruling letter from the IRS in the 1970s "that allowed a taxpayer to make a donation to a private school for the taxpayer's grandchildren" so long as the gift was irrevocable.  Dundon testified that he did not recall if he had "any conversations with Mr. Wright either at the time the foundation was formed or sometime thereafter about whether the foundation would be giving scholarships to schools that Mr. Wright's children were already attending."  Dundon continued that, had Wright disclosed to him that he planned to use Fore Fathers Foundation to pay for his children's tuition, "I would have probably advised him it was improper."  Dundon also stated that he did not recall Wright ever telling him that Fore Fathers Foundation would provide scholarship benefits or student aid.  Had Wright told him of the scholarships and student aid, he would have changed the foundation's articles of organization.

CPA Joseph Snell prepared the Form 990-PF for Fore Fathers in 2008 and 2009.  For the 2008 Form 990-PF, Wright told Snell that Fore Fathers had provided approximately $26,750 in contributions, gifts, and grants as "[f]unds given for outreach ministries, youth activities, and Christian purposes to colleges, churches, Christian high schools, YMCA, family help associations, youth groups."  The 2008 Form 990-PF also answered "no" to the question of whether Fore Fathers "pa[id] compensation to, or pa[id] or reimburse[d] the expenses of, a disqualified person?"  Snell

testified that he and Wright answered "no" based on "discussions [with] Mr. Wright and the things that he listed that they did." Similarly, the 2008 Form 990-PF answered "no" to the question of whether Fore Fathers "provide[d] a grant to an individual for travel, study, or other similar purposes." Snell testified that he and Wright chose the answer based on "[t]he fact that the list of activities that [Wright] gave us did not list any of those as educational or for study purposes." Snell also testified that Wright did not tell him that he was paying his children's high school and college tuition from Fore Fathers Foundation, and that he would have answered the preceding questions differently had he known what Wright was doing. Snell explained that the same answers from the 2008 Form 990-PF carried over to the 2009 Form 990-PF, and that Wright never disclosed to him that he was paying his children's tuition through Fore Fathers.

In summary, the district court did not abuse its discretion by denying Wright's request for a good-faith-reliance instruction. On Counts Two and Three, Wright did not fully disclose the nature of the rent payments in B&P's expenses to HGH. On Counts Four and Five, Wright did not disclose to Dundon or Snell that he was using Fore Fathers Foundation to pay his children's tuition. On Counts Six, Seven, and Eight, Wright prepared his own personal tax returns for the years at issue. Therefore, Wright lacked evidentiary support for the instruction. *See Morgan*, 216 F.3d at 566.

**B.**

Wright also disputes the amount of loss stemming from his conduct. We review the district court's factual findings for clear error and de novo its methodology for calculating the amount of loss. *United States v. Warshak*, 631 F.3d 266, 328 (6th Cir. 2010).

The district court found the amount of loss to be $501,283. The total was the sum of the following: $22,251 in unpaid corporate income tax for tax years 2007–2011 by B&P for the

improper rent and utilities payments for Margaret Wright's apartment; $46,359.23 in unpaid excise taxes for tax years 2003–2009 for improper self-dealing with Fore Fathers Foundation on the tuition payments to Wright's children; and $432,673 from Wright's underreported individual income, after imputing revenue from Remnant to Wright. The district court found that Remnant was a sham entity, so it imputed all Remnant's revenue, less expenses paid to Wright's children, to Wright directly.[2] Because the total amount of loss was more than $250,000 but less than $550,000, Wright's base offense level was set at 18. *See* U.S.S.G. § 2T4.1(H). The district court added a two-level enhancement because Wright used sophisticated means to carry out the tax fraud. U.S.S.G. §2T1.1(b)(2). With a Criminal History of II, Wright's Guidelines range was 37 to 46 months of imprisonment. The district court varied downward, sentenced Wright to 33 months of imprisonment, and ordered him to pay $146,404.04 in restitution.

On appeal, Wright does not dispute the tax loss attributable to B&P, or the excise tax loss attributable to Fore Fathers Foundation from 2003 through 2009. Wright challenges only the calculation of his underreported individual income, asserting it is too high for two reasons. First, he asserts that Remnant should not have been discarded as a sham entity. Second, he argues that the district court lacked the legal authority to impute the tuition payments from Fore Fathers

---

[2] The PSR initially calculated the amount of loss from Wright's individual returns as $684,921. Wright objected, and the district court agreed that the PSR's calculation was too high because "[n]one of the Forms 4549-A, Income Tax Examination Changes, . . . reflects any adjustment for income taxes paid by Wright's children at those lower rates; nor is there any indication that the Government accounted for any such payments in the adjustments . . . to Wright's tax liability." The district court also agreed that health-insurance premiums for Wright's dependents should be deducted. After the government submitted a supplemental sentencing memorandum deducting these amounts, the district court calculated Wright's individual income tax loss as $432,673.

Wright's counsel suggested at oral argument that the government somehow double-counted some of Wright's personal income from Remnant that was reflected on his initially-filed Form 1040s. However, both the government and Wright accounted for Wright's wages from Remnant in their tax-loss positions presented to the district court. *Compare* R.120-2, PageID# 3971 at Row 6 *with* R.120-5, PageID# 3974 at Row 6; *see also* Wright's PSR Objections, R.120, PageID# 3963 ("Row 6 is a negative number showing the amount of officer salaries paid to both Wright and his wife. These numbers are backed off of the gross income number because the Wright[s] claimed these salaries on their original 1040 returns, and therefore gross income must be reduced accordingly to avoid double-counting income."). Therefore, no double-counting occurred.

Foundation to him as gross income. According to Wright, removing Remnant's income from his own would lower his base level to 16 instead of 18, and removing the tuition payments would affect his restitution.

**1.**

A transaction is a sham when it has no "practicable economic effects other than the creation of income tax losses." *Dow Chem. Co. v. United States*, 435 F.3d 594, 599 (6th Cir. 2006) (quoting *Rose v. Comm'r*, 868 F.2d 851, 853 (6th Cir. 1989)). The district court weighed the evidence presented at trial and the testimony from Agent Tony Westendorf and CPA Peter Oettinger at a post-trial hearing. Considering the testimony, the district court found by a preponderance of the evidence that Remnant was a sham entity:

> Wright held himself out externally as a B&P employee, and aside from its tax filings, Remnant did not appear to exist independently of B&P. Further, Oettinger's testimony regarding B&P and Remnant's fee arrangement, whereby B&P only paid Remnant if it was profitable, suggests that Remnant bore no risk of loss independent from the risk borne by B&P, a fact which weighs in favor of finding that the Remnant is a sham entity.
>
> Moreover, Wright derived a substantial financial and legal benefit from this arrangement. By employing his children through Remnant, he was able to pay them salaries that, in turn, were taxed at a lower rate than they would have been had Wright reported those salaries as his income. Through Remnant, Wright accomplished this advantageous tax treatment while not directly implicating B&P. Finally, while Wright may have been in the business of selling insurance at the time he formed Remnant, there is no evidence before this Court that he conducted any insurance business during the tax years at issue. Nor is there any evidence that Remnant provided consulting or management services—or, indeed, had any other client—apart from B&P. In light of the above, the Court finds that the Government has met its burden of showing that the Remnant should be treated as a sham entity for tax loss purposes.

Wright makes several attacks to this conclusion. Factually, Wright takes issue with several of the district court's findings. For example, Wright suggests that the fact that he only used B&P, and not Remnant, business cards, "simply does not support the legal conclusion that Remnant should be disregarded." Wright also suggests that just because Remnant employed his children

does not mean that he was engaging in tax evasion. Wright's interpretation may be plausible, but the district court weighed the evidence differently. And "when there are two permissible views of the evidence, the court may not hold that the trial court's findings are clearly erroneous." *In re H.J. Scheirich Co.*, 982 F.2d 945, 949 (6th Cir. 1993) (citing *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985)). Ultimately, it seems that Wright's primary complaint about disregarding Remnant as a sham is that the government did not present this theory at trial. Yet judicial factfinding at sentencing is proper so long as it does not contradict the jury's verdict or increase the sentence above the statutory maximum. *Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009). Neither happened here, so the district court did not err by considering the sham-entity theory.

With the facts established, Wright's legal argument is not persuasive. Wright protests that the district court "did not set forth the legal rules to be applied in determining whether an entity should be disregarded for federal tax purposes." However, Wright himself does not set forth what these legal rules should be, and he cites no case or statute that would oppose the district court's conclusion.[3] Wright has forfeited this argument by failing to develop it. *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (citation omitted) (alteration in original). In any event, the district court correctly explained why Remnant's sole purpose was to avoid paying income tax—the very

---

[3] At oral argument, Wright's counsel stated, for the first time on appeal, the legal rules he suggests the district court should have applied. It is too late in the game to consider that argument, especially when Wright did not explain his position in his opening brief or reply brief.

definition of a sham. *See Dow*, 435 F.3d at 599. Therefore, we affirm the district court's decision to impute Remnant's income to Wright's personal returns.

**2.**

Wright challenges the decision to impute the tuition payments made by Fore Fathers Foundation to him. According to Wright, the district court used a novel legal theory that has no basis in the law. We disagree.

The Internal Revenue Code defines "gross income" as "all income from whatever source derived." 26 U.S.C. §61(a). Specifically included in gross income are items in 26 U.S.C. §§ 72-91. *See* 26 U.S.C. §61(b). Although § 61(a) lists 14 examples of what is included in gross income, the list is "not limited to" those enumerations. Broad language used to define gross income in consecutive iterations of the Internal Revenue Code "indicates the purpose of Congress to use the full measure of its taxing power within those definable categories." *Helvering v. Clifford*, 309 U.S. 331, 334 (1940).

In addition, none of the specifically enumerated exclusions from income, 26 U.S.C. §§ 101-140, apply to Wright's "accession to wealth" obtained through Fore Fathers Foundation's payments for his children's tuition in Wright's stead. Receipt of payments "constitutes gross income unless it is expressly excepted by another provision in the Tax Code." *Comm'r v. Schleier*, 515 U.S. 323, 328 (1995). *See also United States v. Wells Fargo Bank*, 485 U.S. 351, 354 (1988) ("[E]xemptions from taxation are not to be implied; they must be unambiguously proved"); *Adkins v. United States*, 882 F.2d 1078, 1080 (6th Cir. 1989) ("[P]ayments [received] are accessions to wealth which must, therefore, be included in income the year of receipt, unless the taxpayers can show that Congress has unequivocally proved an exemption for the payments.")

In *Comm'r v. Glenshaw Glass Co.*, the Court analyzed receipt of punitive damages as income under the standard of "accessions to wealth, clearly realized, and over which the taxpayers have complete dominion." 348 U.S. 426, 431 (1955). Wright had complete dominion over the funds used to pay tuition—he managed both B&P and Fore Fathers Foundation as well as the money flow in each; he was also the sole signatory on the Foundation's bank account. Wright acceded to wealth by having his children's tuition paid without paying tax on those amounts first. He channeled the tuition amounts from business operations of B&P through the tax-exempt Fore Fathers Foundation. Had the tuition payments been included in Wright's salary at Remnant, or in his direct management fees at B&P, he would have paid taxes on those amounts, and then paid for his children's tuition with the after-tax income.

Wright directly benefited from the tuition payments from Fore Fathers Foundation, and the district court properly considered them to be included in his gross income under 26 U.S.C. § 61(a).

Wright counters that "Congress occupied the field with a comprehensive enforcement and penalty regime to regulate and deter impermissible foundation donations." According to Wright, 26 U.S.C. §§ 4941 and 4945 limit the possible penalties for self-dealing between a private foundation and a disqualified person to excise taxes and penalties. This is especially true here, Wright says, because he "corrected" his self-dealing in July 2016 by paying back $168,234 from his personal account to Fore Fathers Foundation, which in turn remitted that amount to B&P.

Wright's argument fails for three reasons that the district court has already explained. First, even though Wright paid back *most* of his self-dealing from Fore Fathers Foundation, he did not pay it all back, so he did not "plac[e] the private foundation in a financial position not worse than in which it would be" had he not engaged in self-dealing. 26 U.S.C. §4941(e)(3). Therefore, as the district court explained, Wright has not actually corrected his self-dealing. Second, even if

Wright had corrected, he did so on his 2016 returns.  However, each tax year stands alone, so Wright should have corrected the tax returns from each year at issue at sentencing.  *See United States v. Consol. Edison Co. of N.Y.*, 366 U.S. 380, 384 (1961) ("It is settled that each 'taxable year' must be treated as a separate unit, and all items of gross income and deduction must be reflected in terms of their posture at the close of such year.").  Third, Wright does not cite any legal authority explaining why the district court's decision was wrong.  The only case Wright cites comes in his reply brief.  In *United States v. Oestreich*, the defendant appealed his sentence for willfully failing to file tax returns.  286 F.3d 1026, 1027 (7th Cir. 2002).  Defendant objected to the inclusion of a $1,000,000 claim for an administrative refund in his overall tax loss.  *Id.* at 1028.  However, there was no indication in *Oestreich* that the government or the district court ever characterized the $1,000,000 as income under 26 U.S.C. § 61(a), so *Oestreich* is inapplicable here.

In summary, the district court properly construed the improper tuition payments from Fore Fathers Foundation as gross income attributable to Wright under 26 U.S.C. § 61(a).

**III.**

We **AFFIRM** Wright's convictions and his sentence.