In the
United States Court of Appeals
For the Seventh Circuit

Nos. 99-4209 & 99-4303

United States of America,

Plaintiff-Appellee,

v.

Bonnie Oestreich, also known as Bonnie Rees,
also known as Bonnie P. Duke and George A.
Oestreich,

Defendants-Appellants.

Appeals from the United States District Court
for the Southern District of Illinois.
Nos. 4:99CR40021-002 & 4:99CR40021-001--James L. Foreman, Judge.

Argued April 17, 2001--Decided April 18, 2002

Before Fairchild, Cudahy, and Coffey,
Circuit Judges.

Fairchild, Circuit Judge.  George and
Bonnie Oestreich, married from June 1992
to February 1996 and active in a tax
protest group "We the People," which
advocated hiding assets and violating tax
laws, were convicted of conspiring to
defraud the United States for the purpose
of impeding the lawful functions of the
Internal Revenue Service in the
ascertainment, computation, assessment,
and collection of income and Social
Security taxes. 18 U.S.C. sec. 371.
George was also convicted of seven counts
of willfully failing to file tax returns.
26 U.S.C. sec. 7203.

The Guideline applicable to the
conspiracy is U.S.S.G. sec. 2T1.9, which
directs the use of sec. 2T1.1 (or sec.
2T1.4).

I.  George's Appeal

The probation officer computed a base
offense level of 19 under sec. 2T1.1 (tax
loss) and added 8 levels not contested on
appeal for a total offense level of 27.
Because George's Criminal History
Category was I, the resulting range of

imprisonment was 70-87 months. The sentence imposed was 70 months, a combination of 60 months on the conspiracy count and a consecutive 10 months on one of the counts for failure to file.

On appeal George disputes part of the calculation of tax loss. He does not challenge the tax loss figures of $130,600 (based on estimated income 1991-1998) nor $55,041 (unpaid self-employment taxes 1991-1998) nor $69,791 (refunds im properly claimed in 1993 for income tax paid in 1989 and 1990.) He does object to the inclusion of an administrative claim for $1,000,000 filed in June 1996. If the $1,000,000 is properly included, the base offense level of 19 and the total of 27 are correct; if not, the base offense level would be 16, the total 24, and the resulting range 51-63 months. Table, U.S.S.G. sec. 2T4.1.

The probation officer included the $1,000,000 claim on the premise that it fell "within the meaning of U.S.S.G. sec. 2T1.1(c)(4) [('If the offense involved improperly claiming a refund to which the claimant was not entitled, the tax loss is the amount of the claimed refund to which the claimant was not entitled.')]." It was not, however, a claim for refund, but a totally ineffective claim for damages.

The claim was entitled "Administrative claim for damages and return of all property, 26 U.S.C. sec. 7433(d)(1)." It and accompanying documents, referred to as "codicils," contained much tax protester gibberish attempting to deny liability for federal income tax and social security contributions. The sec. 7433 referred to, in its form when George filed his claim on June 7, 1996, authorized an action for damages against the United States if an officer of the Internal Revenue Service, in collection of tax, recklessly or intentionally disregards a provision of Title 26 or a regulation thereunder. Recoverable damages were the lesser of $100,000 or actual damages and costs. The action may be brought only within 2 years of the accrual of the right. Pub. L. 100-647, Title VI, sec. 6241(a), Nov. 10, 1988, 102 Stat. 3747. George presumably got his $1,000,000 figure from an amendment which had passed in the House on April 16,

1996, but was not enacted until July 30, and then applicable only to subsequent actions by officers or employees of the IRS. Pub. L. 104-168, Title VIII, sec. 801, July 30, 1996. Subsection (d)(1) denied judgment unless plaintiff had exhausted administrative remedies within the IRS. George's claim stated that it was an attempt to correspond with administrative remedies and cited 26 C.F.R. sec. 301.7433(e)(i) through (v), "Procedures for an administrative claim." That regulation, then and now, limited administrative recovery to the lesser of $100,000 or actual damages plus costs. The indictment, Count 1, par. 21, refers to the claim as "correspondence . . . in which Oestreich purported to make an administrative claim," and on appeal the government characterized the claim as "an administrative claim for damages." (Br. at 7.)

A claim for refund would be governed by 26 U.S.C. sec. 7422 and 26 C.F.R. sec.sec. 301.6402-2 and -3, neither of which was invoked here.

George's claim did not assert that any officer or employee of the IRS had ever recklessly or intentionally disregarded any provision of the law or a regulation or that damage resulted. The only accusation of anyone was that Congress had perpetrated fraud, coercion and fear. It was a nullity even as a claim for damages. We conclude that it was error to include the $1,000,000 as a claimed refund and therefore a tax loss.

George Oestreich had objected in district court to including the claim for damages as tax loss, and the government concedes that the standard of review as to him is whether the inclusion was clearly erroneous.

The probation officer had included a statement that "if the Court determines that the $1,000,000 claim filed against the Internal Revenue Service was so frivolous as not to be taken seriously by that agency, the Court may depart [downward under U.S.S.G. sec. 5K2.0]." Both Oestreichs argue on appeal that the district court erred in failing to consider or grant a downward departure. The failure is not reviewable by this court unless it resulted from an allegedly erroneous conclusion of law. United

States v. Williams, 198 F.3d 988, 994-95 (7th Cir. 1999). Here the probation officer's statement concerning departure was in the record before the court, and there is nothing in the record of George's sentencing, unlike Bonnie's, to show that the district judge thought he did not have discretion to depart downward.

Counsel for the Oestreichs also argued that they were not really seeking $1,000,000, but only the amount of their tax contributions, a much smaller figure, which the government had the burden to prove. He did not argue the analysis we have made, but we do not deem it appropriate to treat his failure to make that argument as a waiver or forfeiture. Counsel on both sides seem to have overlooked the fact that when the claim was filed the statute under which it pur portedly was filed limited recovery to $100,000, and the regulation had the same limit.

Both parties discuss a line of Seventh Circuit cases holding that in applying the Guidelines to fraud cases the intended loss should be counted and the improbability of success of the fraud should be considered if at all as a basis for downward departure. Those cases, however, all involve crimes of fraud in which punishment is to be determined by applying U.S.S.G. sec. 2F1.1. See, e.g., United States v. Lorefice, 192 F.3d 647 (7th Cir. 1999) (mail and wire fraud); United States v. Coffman, 94 F.3d 330 (7th Cir. 1996) (wire fraud). Here the Guidelines are U.S.S.G. sec.sec. 2T1.9 and 2T1.1(c)(4), and our question is whether George was improperly claiming a refund. George's claim was for damages and even on the assumption that damages would be equivalent to the taxes he had paid in the previous two years and that he had paid some, the claim asserted no facts on which there could be recovery, and recovery was impossible, not merely improbable. A claim on which recovery was legally impossible should not have been counted as tax loss. See United States v. Khan, 969 F.2d 218, 220 (6th Cir. 1992) (applying fraud guideline to sentence for mail fraud "an offense level may not be increased on the basis of an estimated fraud loss when no actual loss is possible"). See also comment on Khan and other cases, Coffman, supra, 94 F.3d at

336-37.

II. Bonnie's Appeal

The probation officer computed a base offense level (tax loss) of 19. In reaching a total offense level of 27, the officer assigned 4 levels under sec. 2T1.1(b), Specific Offense Characteristics, and 4 other levels. Only the sec. 2T1.1(b) levels are challenged on appeal. Bonnie's Criminal History Category was I, and the resulting range of imprisonment would be 70-87 months, but the statutory maximum for the conspiracy was 60 months and that was her sentence.

On appeal Bonnie joins George in arguing that a claim for damages, filed by her on June 10, 1996, and closely similar to George's, was improperly included in calculation of tax loss. What we have said with respect to this claim in George's appeal applies to Bonnie as well. Tax loss for her was computed as $1,172,717, and reducing that by $1,000,000 would produce a base offense level of 15, a total of 23, and a range of 46-57 months imprisonment. Bonnie had not objected before the district court, but the inclusion of the $1,000,000 affected her substantial rights by causing her to be sentenced at an excessive Guideline range, see United States v. Hall, 212 F.3d 1016, 1022 (7th Cir. 2000), and in other respects satisfied our requirements for correcting plain error.

Bonnie also joins George in his argument that we should remand for consideration of a downward departure. We note that in her case the jurisdictional problem does not exist. The transcript of her sentencing shows that the judge advised Bonnie that the Guidelines had taken away his discretion and that he was bound by the Guideline range. Momentarily, at least, he overlooked the portion of the presentence report which informed that the court might depart downward if it determined that the claim was sufficiently frivolous. Even if we were satisfied that the amount of the claim was properly included, we would have jurisdiction to remand for consideration of downward departure. Because, however, we decide that it was error to include

the $1,000,000 claim in the tax loss, and remand for resentencing in a lower range, we need not pursue this argument.

Aside from the $1,000,000 claim, the probation officer charged Bonnie with tax loss of $172,717. This was made up of George's unpaid income and self-employment taxes for specified years-- $102,926, not at issue, and $69,791, now objected to. The latter represents refunds improperly claimed by George for 1989 and 1992. He filed the amended returns in February and September, 1993. George and Bonnie were then married, living together, and active in the tax protester organization which advocated violation of law. The filings were well within the purposes of the conspiracy which began in about August 1992. There was no evidence suggesting that Bonnie was unaware of the filings. Although George had been married to someone else in 1989 and 1990, and his then wife and he had filed joint returns, it was not clearly erroneous to find that the filings in 1993 were reasonably foreseeable to her. See U.S.S.G. sec. 1B1.3(a)(1)(B) (defendant accountable for "all reasonably foreseeable acts and omissions of others" in furtherance of "jointly undertaken criminal activity").

Bonnie objects to two levels added under sec. 2T1.1(b)(1) ("If the defendant failed to report . . . income exceeding $10,000 in any year from criminal activity, increase by 2 levels.") George had failed to report $14,200 in income received in 1993 from the sale of unregistered securities in violation of Illinois law. Bonnie argues that George's trading of unregistered securities was unforeseeable to her and outside the scope of the conspiracy. Both propositions may well be true, but the significant questions are whether George's failure to report the income is within the scope of the conspiracy and whether the failure to report was reasonably foreseeable to her. The purposes of the conspiracy included impeding the IRS in the collection of income taxes, and George's failure to report income was well within that purpose. His duty to report existed until tax time in 1994, while the two were married, living together, active in the tax protester organization referred to, and the conspiracy continued. The record

shows that the Illinois Securities Department started a proceeding against George to stop the sales and on December 20, 1993 Bonnie delivered papers to the Department explaining why subpoenas would not be honored. A finding that George's failure to report this income furthered the conspiracy and was reasonably foreseeable to her was not clearly erroneous.

We note that one case has drawn a distinction between the use of "the defendant" in U.S.S.G. sec. 2T1.1(b)(1) and the use of the passive voice in sec. 2T1.1(b)(2), possibly suggesting an argument that (1) is applicable only to the defendant who failed to report and not to a co-conspirator who had no duty to report. United States v. Lewis, 93 F.3d 1075, 1084 (2d Cir. 1996). Cf. United States v. Harris, 230 F.3d 1054, 1061-62 (7th Cir. 2000) (Ripple, J., dissenting); United States v. Sullivan, 75 F.3d 297, 303 (7th Cir. 1996); United States v. Tagore, 158 F.3d 1124, 1129 (10th Cir. 1998). Bonnie has not made this argument and we do not consider it.

Bonnie further contends that it was plain error not to decrease her offense level as a minimal or minor participant in the conspiracy. U.S.S.G. sec. 3B1.2. Such a reduction was warranted only if she was "substantially less culpable" than George. See United States v. Montenegro, 231 F.3d 389, 395 (7th Cir. 2000) (reductions granted in conspiracy only if defendant is substantially less culpable than conspiracy's other participants). Bonnie's extensive involvement in We the People included taking attendance and collecting money at meetings, and she also filed false documents with banks and the IRS, made obstructionist responses to IRS inquiries, and attempted to hide assets by paying for them with cash or third-party checks and titling them under her maiden name. We find no error in the district court's determination that she was neither a minor nor a minimal participant.

We vacate both sentences and remand for resentencing consistent with this opinion. George's sentence of imprisonment is to be within the range of 51-63 months and Bonnie's within the range of 46-57 months unless the court

finds some proper basis for downward
departure pursuant to U.S.S.G. sec.
5K2.0.