In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-3722

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOHN QUINN MCKINNEY,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 3:11-CR-30029-DRH—**David R. Herndon**, *Chief Judge.*

ARGUED JUNE 8, 2012—DECIDED JULY 13, 2012

Before POSNER, FLAUM, and WILLIAMS, *Circuit Judges.*

FLAUM, *Circuit Judge.* John McKinney, along with his wife, brother, and sister-in-law, was charged in an eleven-count indictment with conspiracy to defraud, impede, impair, obstruct, and defeat the functions of the IRS in the collection of income taxes, 18 U.S.C. § 371; tax evasion, 26 U.S.C. § 7201; and false statements to revenue agents, 26 U.S.C. § 1001. McKinney entered a plea agreement and a factual stipulation with the govern-

ment. At sentencing, he received a two-level enhancement to his base offense level for failing to report income exceeding $10,000 from criminal activity, U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 2T1.1(b)(1), as well as a two-level enhancement for obstruction of justice, U.S.S.G. § 3C1.1. He appeals these enhancements.

We affirm the district court.

## I.  Background

### A.  Tax Evasion

McKinney and his brother Robert own and operate McKinney Hauling, a construction business. In early 2003, the IRS filed a Notice of Federal Tax Liens against McKinney for taxes owed. Thereafter, the IRS pursued collection multiple times. McKinney avoided paying taxes by transferring money earned from his construction business into separate nominee accounts, which McKinney and his brother used for personal and household expenditures. He concurrently provided to IRS Revenue Officers false statements about his ability to pay the taxes he owed. He failed to pay taxes during 1999, 2000, 2002, 2003, 2004, 2005, and 2006.

Because of the federal tax liens, McKinney was unable to obtain a residential mortgage. Therefore, his wife, Chamethele, independently applied for and obtained a loan to purchase a home in Madison County, Illinois. On her application, she falsely stated that she was a full-time manager of McKinney Hauling with a gross monthly income of $15,374.23. Her husband signed a false employ-

ment verification document to confirm her representations. He, however, earned the income used to pay for the home. Accordingly, the mortgage fraud diverted business income earned by McKinney into an asset purchased by his wife, enabling him to avoid the IRS tax assessment and lien. Chamethele McKinney defaulted on the mortgage on July 1, 2008.

McKinney's sister-in-law, Belinda McKinney, similarly applied for a loan to purchase a home in Madison County, Illinois. She, too, falsely declared that she was a full-time employee of McKinney Hauling, that she had been employed for ten years, and that she earned $9,500 per month. The residential mortgage lender called McKinney to confirm that Belinda was a full-time employee. McKinney falsely represented that his sister-in-law was a full-time employee. She did not report such employment on her tax return. This financial transaction diverted business income earned by Robert McKinney into an asset owned by Belinda, thereby avoiding the IRS tax assessment and lien.

## B. Obstruction of Justice

IRS Revenue Officers interviewed McKinney and his brother regarding their failure to pay income taxes. Both McKinney and his brother made false statements regarding their actual income and assets. On March 23, 2007, McKinney falsely stated that he lived at 1528 Gaty Avenue, East St. Louis, St. Clair County, Illinois, when, in fact, he lived with his wife at their Madison County home. On October 22, 2007, McKinney stated that he and his

brother were thinking about closing their business because they had no work, which was untrue. On November 21, 2007, a Revenue Officer conducted a field visit with McKinney and his brother during which both brothers indicated that they lacked work and income. These statements were also false: they received income just before and after that meeting from their construction business. The false information provided by the brothers caused the IRS to close its investigation on December 13, 2007.

## C.  Procedural Background

Federal authorities ultimately discovered the brothers' tax evasion, and, on February 24, 2011, they charged McKinney with one count of conspiracy, one count of tax evasion, and three counts of making false statements. McKinney pled guilty to each charge.

The probation office filed with the court a Presentence Investigation Report ("PSR") recommending enhancements for failing to report the source of income exceeding $10,000 in any year from criminal activity and for obstruction of justice. McKinney objected to both recommended enhancements. First, he challenged the enhancement for failure to report the source of income exceeding $10,000 in any year from criminal activity as inapplicable to him because his wife, not he, received the mortgage check. Second, he argued that the adjustment for obstruction of justice for providing false information to the IRS was improper because (1) the IRS could have verified the information sought, (2) the information regarding his business was accurate, (3) his false statements did not rise to the level

contemplated by the Sentencing Guidelines, and (4) the IRS field agent was not acting as a law enforcement agent when he made the false statements.

The district court entered a judgment against McKinney and adopted the PSR's recommendations, treating his applicable Guideline range as 51-63 months of imprisonment. It sentenced McKinney to 57 months' imprisonment on each count, to be served concurrently. It also imposed three years' supervised release and ordered him to pay restitution of $1,512,384.22.

## II.  Discussion

We review the district court's application of the Sentencing Guidelines de novo. *See United States v. Sheneman*, No. 11–3161, 2012 WL 1959551, at *5 (7th Cir. June 1, 2012). We review its findings of fact for clear error, *id.*, including its determination that McKinney's uncharged involvement in the mortgage fraud scheme constitutes conduct relevant to his tax evasion, *see United States v. Acosta*, 85 F.3d 275, 279 (7th Cir. 1996), and its factual findings underlying the obstruction enhancement, *United States v. Vallar*, 635 F.3d 271, 288 (7th Cir. 2011).

### A.  Enhancement for Failure to Report Income From the Uncharged Mortgage Fraud Scheme

Under the Guidelines, the district court may increase McKinney's base offense level by two if he "failed to report or to correctly identify the source of income exceeding

$10,000 in any year from criminal activity." U.S.S.G. § 2T1.1(b)(1). The district court applied this enhancement, finding that McKinney failed to report to the IRS $45,000 that his wife received from the mortgage loan. McKinney challenges that this enhancement was improper because (1) he had no duty to report income obtained by his wife from a third party, and (2) he was not charged with the specific criminal activity related to the mortgage fraud. We disagree.

### 1. Duty to Report Income

Section 2T1.1(b)(1) of the Sentencing Guidelines states that the sentencing enhancement applies upon the *defendant's* failure to report income over $10,000. Thus, in McKinney's view, Section 2T1.1(b)(1) is inapposite since his wife, not he, pocketed the $45,000 home loan proceeds and the loan was in her name.

We rejected McKinney's argument in *United States v. Oestreich*, holding that an individual whose spouse obtained income through illegal means shares the duty to report such income and may receive a sentence enhancement should that spouse fail to do so. 286 F.3d 1026, 1030-31 (7th Cir. 2002). In *Oestreich*, a husband and wife conspired to defraud the United States for purposes of impeding the IRS. The district court considered whether to enhance the wife's sentence under Section 2T1.1(b)(1), and it concluded that, as a participant in the conspiracy to impede the IRS' collection of taxes, she shared her spouse's obligation to report the income and could reasonably foresee that he would not report it. *Id.* at 1030-31. Ac-

cordingly, it found that her own failure to report the income merited an enhancement under Section 2T1.1(b)(1).

As in *Oestrich*, McKinney and his wife conspired to perpetrate a mortgage fraud scheme. Chamethele McKinney falsely represented where she worked in order to obtain the home loan, and her husband, through false employment records, substantiated her representations. They worked together to obtain the $45,000 loan, which they both undisputedly had a duty to report to the IRS, whether via a joint return or by one of them separately. Chamethele McKinney did not report the income, a result foreseeable to McKinney as participant in and beneficiary of the mortgage fraud. He, therefore, had a duty to report the income as well.

In *Oestrich*, we noted in dicta a possible tension between the express use of the term "defendant" in U.S.S.G. § 2T1.1(b)(1) ("If the defendant failed to report or to correctly identify the source of income exceeding $10,000 in any year from criminal activity, increase by 2 levels.") and the passive phrasing of U.S.S.G. § 2T1.1(b)(2) ("If the offense involved sophisticated means, increase by 2 levels."). 286 F.3d at 1031. One could argue, we suggested, that the distinction between the sections' language meant that Section 2T1.1(b)(1) applied "only to the defendant who failed to report and not to a co-conspirator who had no duty to report." *Id.* McKinney relies on this dicta to underscore that he, as an uncharged co-conspirator in the mortgage fraud, is not responsible for his wife's failure to report. Assuming arguendo that McKinney's reading of Section 2T1.1(b)(1) is correct, he still cannot prevail on this

argument. Our dicta suggested that Section 2T1.1(b)(1)'s defendant-specific language *might* immunize a co-conspirator from the enhancement when the co-conspirator *had no duty to report*. First, McKinney is the defendant, not just a co-conspirator, in the tax evasion scheme. The issue, then, is whether, as the defendant, he had a duty to report the income and failed to do so. McKinney, under general principles of federal income tax law, was jointly and severally liable for "any deficiencies, penalties and interest assessed against [him and his wife] regarding [a joint] return," *Kindred v. Comm'r of Internal Revenue*, 454 F.3d 688, 693 n.10 (7th Cir. 2006), unless he was an "innocent spouse." *Id.* (citing IRC § 6015). He most certainly was not an innocent spouse, and we are unconvinced by his argument that, since he did not file taxes at all during the subject period, it is "a stretch to find a duty to report income . . . as if he were filing a joint tax return." He asks us to conclude that since he committed criminal tax evasion and recruited his wife into his scheme, she alone, not he, is responsible for declaring the income they obtained. We decline to treat his criminal tax evasion as a boon. So long as the mortgage fraud scheme constitutes conduct relevant to the conspiracy, tax evasion, and false statements with which he was charged, *see* U.S.S.G. § 1B1.3(a)(2), the district court could find a duty to report the income and consider his failure to fulfill that obligation. *See* U.S.S.G. § 1B1.3(a)(1) (stating that a defendant's guideline range "shall be determined on the basis of . . . (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and (B) in the case of a jointly undertaken

criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of other in furtherance of the jointly undertaken criminal activity").

### 2. Relevant Conduct Inquiry

We must, thus, evaluate whether the district court clearly erred in finding that the mortgage fraud was conduct relevant to McKinney's conspiracy to defraud the IRS. Relevant conduct is defined as acts that were "part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). A common scheme or plan includes two or more offenses that are connected by a common factor, including common accomplices, common purpose, or common modus operandi. U.S.S.G. § 1B1.3, cmt. n.9(A). Offenses that are not part of a common scheme or plan may still constitute the same course of conduct if they are connected or related to a degree to suggest that they are a part of a "single episode, spree or ongoing series of offenses." *Id.* at cmt. n.9(B).

At sentencing, the district court found that McKinney's failure to report income from the mortgage fraud was "part and parcel" to the tax evasion, advancing a common scheme to hide money and avoid paying taxes. The court found that, in furtherance of his tax evasion, McKinney's wife obtained the mortgage loan in her name and per false employment information to hide her husband's business income and avoid the IRS tax assessment and lien. McKinney's own false statements about his wife's employment enabled his wife to obtain the loan. Accordingly, it

held that the mortgage fraud was part of the common scheme of tax evasion to which McKinney pled guilty, making it relevant conduct under the Sentencing Guidelines.

We affirm the district court. *See Shenemen*, 2012 WL 1959551, at *5 ("Under the clear error standard, we will affirm a district court unless we are left with the definite and firm conviction that a mistake has been committed." (quoting *United States v. Reese*, 666 F.3d 1007, 1021 (7th Cir. 2012) (internal quotation marks omitted))). The Stipulation of Facts, which McKinney does not dispute, states that he avoided the IRS tax assessment and lien by diverting assets into this loan. He thereby concedes that the mortgage fraud served the common scheme of tax evasion, a connection also evidenced by the fact that both schemes shared common accomplices and modus operandi—all four McKinneys were complicit in both the mortgage fraud and the tax evasion.

We hold, therefore, that the mortgage fraud was conduct relevant to McKinney's tax evasion, that he had a duty to report the income from the fraudulently obtained mortgage loan, and that the district court properly considered his failure to report as it fashioned its sentence.

## B. Enhancement for Obstruction of Justice

McKinney also appeals the district court's two-level enhancement for obstruction of justice. The district court concluded that his false statements regarding his residence and employment status warranted an adjustment for

obstruction of justice under Section 3C1.1, which states that a defendant commits obstruction if:

> (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense[.]

U.S.S.G. § 3C1.1. McKinney argues that because the false statements were made prior to the initiation of a criminal investigation, the adjustment should apply only if his conduct was "purposely calculated, and likely to thwart the investigation or prosecution of the offense of conviction." *Id*. at cmt. n.1. He posits that lies to federal officers, without more, cannot rise to the level of obstruction for purposes of a sentencing enhancement.

As an initial matter, it is of no moment that a criminal investigation had not been initiated at the time McKinney lied to IRS agents. Section 3C1.1 penalizes "obstructing or impeding the administration of justice." Though the criminal investigation had not yet begun, the IRS was investigating McKinney's tax activities, which eventually and inevitably merited further investigation as criminal tax evasion. The fact that the investigation originated as civil, not criminal, does not legitimize McKinney's lies and attempts to frustrate the government's inquiries.

Nevertheless, providing false statements or incomplete or misleading information to law enforcement, if not under oath, does not constitute obstruction if the investigation is

not actually obstructed or impeded. *See id.* at cmt. n.5(B); *United States v. Selvie*, ___ F.3d ____, 2012 WL 2477835, at *3 (7th Cir. June 29, 2012). The government must establish that the defendant's disinformation was material and obstructed or impeded the official investigation or prosecution of the instant offense. *See* U.S.S.G. § 3C1.1 cmt. n.4(G). The information is material if, were it believed, it "would tend to influence or affect the issue under determination." *Id.* at cmt. n.6. The misinformation obstructs or impedes the investigation if it "burden[s] law enforcement and precipitate[s] 'expended resources to track down its false leads.'" *See Selvie*, 2012 WL 2477835, at *3 (quoting *United States v. Griffin*, 310 F.3d 1017, 1023 (7th Cir. 2002))." McKinney's lies to the IRS satisfy both criteria.

McKinney made false statements to an IRS Revenue Officer on three occasions. On March 23, 2007, he falsely stated that he lived at a home in St. Clair County, Illinois, when he actually lived in Madison County, Illinois with his wife. On October 22, 2007, he stated that he and his brother were thinking about closing the doors of their business because they did not have any current work. In truth, they did have work, including a demolition for which they issued an invoice on October 27, 2007. On November 21, 2007, the brothers told an IRS agent during a field interview that they did not have any income or work. In fact, on the same day they made a deposit of $7,500 from Keeley & Sons and received and additional $240,377 from Keeley & Sons during 2007. These lies were material because they "influence[d] or affect[ed] the issue under determination," U.S.S.G. § 3C1.1 cmt. n.6, whether the McKinneys could afford to pay their taxes owed. Moreover, they caused the

IRS to close its investigation by representing the McKinneys' inability to pay on the basis of financial hardship, thwarting the IRS' discovery of the criminality of the tax evasion—at least temporarily—and demanding additional government resources to uncover the fraud. *See* U.S.S.G. § 3C1.1 cmt. n.4(G); *Selvie*, 2012 WL 2477835, at *3-4. His actions merited an obstruction enhancement.

We are not persuaded by McKinney's assertions to the contrary. He refers us to *United States v. Urbanek*, 930 F.2d 1512, 1515 (10th Cir. 1991), in which the Tenth Circuit found the defendant's false statements to IRS agents denying the existence of bank accounts or taxable income to be "nothing more than a denial of guilt or an 'exculpatory no.'" *Id.* Under the Guidelines, the court held, refusing to admit guilt or volunteer information cannot underlie an obstruction enhancement.

Unlike the defendant in *Urbanek*, McKinney did not merely deny wrongdoing, but affirmatively lied to the IRS. He lied about his past finances, he made false representations about the current and future state of his business, and he lied about where he lived to conceal the value of his home. Moreover, unlike in *Urbanek*, where the defendant immediately recanted his lie when confronted with the truth, McKinney's false statements hindered the IRS investigation and caused the expending of additional time and manpower to uncover and prosecute the tax evasion scheme. Therefore, we conclude that McKinney obstructed justice, and the district court properly enhanced his base offense level accordingly.

### III.  Conclusion

For the foregoing reasons, we AFFIRM.