In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-1719

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

HECTOR HERNANDEZ,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 3:10-cr-50088-2 — **Frederick J. Kapala**, *Judge.*

ARGUED FEBRUARY 13, 2013 — DECIDED SEPTEMBER 10, 2013

Before BAUER, SYKES, and HAMILTON, *Circuit Judges.*

BAUER, *Circuit Judge.* On January 18, 2011, Hector Hernandez was charged with one count of conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846, and two counts of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1). Hernandez filed what is described as a Petition to Enter a Plea of Guilty and then pleaded guilty to all three counts. At sentencing, the district court found that Hernandez was

responsible for more than 150 kilograms of cocaine and sentenced him to a term of 210 months' imprisonment, followed by four years of supervised release. On appeal, Hernandez challenges the constitutional validity of his plea, the district court's finding that he was accountable for more than 150 kilograms of cocaine, and the district court's calculation of his sentence. For the following reasons, we affirm.

## I. BACKGROUND

On January 18, 2011, Hernandez and his co-defendant Ricardo Vasquez were indicted on three counts of conspiracy to possess, possession, and distribution of cocaine. That same day, Felipe Rodriguez was also indicted. Rodriguez had been cooperating with the Government against both Hernandez and Vasquez, and he had implicated the men in three large quantity cocaine shipments at a quarry in Rockford, Illinois.

Hernandez entered a plea of not guilty. On July 7, 2011, Vasquez pleaded guilty pursuant to a written plea agreement, which stated that he assisted Hernandez in delivering and off-loading three shipments to the Rockford quarry that each involved at least 75 kilograms of cocaine.

On September 1, 2011, Hernandez withdrew his not guilty plea and pleaded guilty. As part of his guilty plea, Hernandez submitted a Petition to Enter a Plea of Guilty. In the Petition, Hernandez stated that he was pleading guilty to the three counts contained in the Indictment, and acknowledged that the Indictment charged him with conspiring to possess with intent to distribute more than 500 grams of cocaine. Hernandez further acknowledged that his guilty plea exposed him to a

statutory mandatory minimum sentence of five years' imprisonment and a maximum sentence of forty years, pursuant to 18 U.S.C. § 841(b)(1)(B). Hernandez's Petition did not detail specific allegations concerning the three quarry shipments, but acknowledged that, "the Government will likely assert that the base offense level is 38 based upon alleged relevant conduct and the delivery of more than 150 kilograms of cocaine" and that he was subject to a mandatory minimum sentence of five years' imprisonment.

On February 1, 2012, Hernandez filed a sentencing memorandum in which he objected to the drug quantity, disputed the assessment of criminal history points, and asked the district court to find him eligible for the safety valve reduction. On December 12, 2012, the district court conducted the first part of a bifurcated sentencing hearing. Before Hernandez's plea colloquy, the district court swore in a Spanish interpreter to translate the proceeding for Hernandez. The district court then asked Hernandez if he was "pleading guilty to all the counts" and Hernandez responded by asking, "what are the charges?" The district court assured Hernandez that it would explain the charges in detail later in the proceeding and asked whether he was pleading guilty to all three counts. Hernandez responded that he only discussed pleading guilty to one charge with his "other attorney." Hernandez's lawyer interjected and suggested that his law partner may have explained the proceeding differently: "The case is broken down into three counts … So, it's one case, one charge, but he's pleading guilty to all three of those counts." The district court then briefly delayed the proceeding so that Hernandez could discuss the issue with his attorney. Following

the break, the district court asked Hernandez how he would like to proceed and told Hernandez that while he should consider his attorney's advice, the decision whether to plead guilty was his alone. Hernandez confirmed that he had discussed all of the counts with his attorney and did not have any questions for the court. The court then asked which, if any, of the charges did Hernandez wish to admit. Hernandez replied, "Your Honor, that I plead guilty to the three charges."

Next, the district court informed Hernandez of his constitutional rights, and Hernandez acknowledged that he understood those rights. The district court then read all three charges contained in the indictment, and Hernandez told the court he understood the charges, that they were the same charges he discussed with his attorneys, and that he had no questions about the charges. The district court informed Hernandez about the possible penalties that he could face during sentencing, and he acknowledged that he understood. Finally, at the district court's request, the government recited the factual basis for the plea. The district court asked the defendant if the summary was correct, and he agreed that it was. The district court then asked Hernandez if he disagreed with any part of the government's statement and he said no. Finally, the district court asked Hernandez if he committed the offenses as described, and he said yes.

Much of the drug quantity evidence at Hernandez's hearing came from the testimony of Felipe Rodriguez, a cooperating witness. Rodriguez testified that he had known Hernandez for over three years, and that Hernandez had approached him 18 months earlier for help in finding a location where Hernandez could off-load shipments of cocaine. Rodriguez found a rock

quarry that he believed could handle Hernandez's cocaine shipments in Rockford, Illinois. Rodriguez testified in detail about three separate shipments Hernandez made to the rock quarry, involving approximately 75 kilograms of cocaine per shipment. Rodriguez also testified that Hernandez gave him approximately 15 kilograms to sell on his own.

On direct-examination, Rodriguez testified that he was present at the quarry for all three cocaine shipments. On cross-examination, however, defense counsel elicited from Rodriguez that he initially told investigators that he was present for only two of the three shipments to the quarry. FBI Agent Heatherman subsequently testified that he believed that Rodriguez thought being "present" at the quarry meant to be physically inside the quarry, and that during one shipment Rodriguez considered himself not to be "present" because he was outside of the quarry gate.

After assessing Rodriguez's testimony, the district court found it to be reliable. Rodriguez's descriptions of the cocaine shipments, along with his meetings with Hernandez where he received multiple kilograms of cocaine, were squarely against Rodriguez's penal interest. Further, Rodriguez's testimony was corroborated by additional evidence. During the hearing, an investigator testified that he overheard two telephone conversations between Hernandez and Rodriguez confirming that they were negotiating the logistics of cocaine shipments. Additionally, more than one kilogram of cocaine, cocaine trafficking paraphernalia, and $455,278 in cash were found in Hernandez's residence; which the district court found to be a strong indication that Hernandez was a large volume cocaine trafficker.

The second part of the sentencing hearing took place on March 13, 2012. The PSR concluded that Hernandez possessed with intent to distribute 2.165 kilograms of cocaine and was responsible for the delivery and off-loading of 225 kilograms of cocaine over the course of three shipments in the Rockford quarry. Applying the 2011 Sentencing Guidelines, the PSR determined Hernandez's base offense level to be 38 because he was responsible for more than 150 kilograms of cocaine, pursuant to § 2D1.1(c)(1). The district court specifically asked the Government and defense counsel if there were any objections to the PSR. Neither side objected. The district court adopted the factual findings of the PSR and concluded that the defendant was responsible for more than 150 kilograms of cocaine but only exposed to a five-year mandatory minimum. The district court based this finding on the testimony of Rodriguez, as well as the cocaine and large quantity of money found at Hernandez's residence. The district court applied a two-level reduction for acceptance of responsibility under § 3E1.1, but it declined to find Hernandez eligible for a safety valve reduction. The district court calculated a Guidelines range of 210 to 262 months, considered the § 3553(a) factors, heard arguments from counsel and a statement from Hernandez, and then sentenced Hernandez to 210 months' imprisonment. Hernandez filed a timely appeal.

## II. DISCUSSION

On appeal, Hernandez argues that his guilty plea was not given knowingly and voluntarily, that the district court committed error by relying on the testimony of a cooperating witness when it determined the drug quantity for which Hernandez was responsible, and that the district court

improperly enhanced Hernandez's mandatory minimum sentence in violation of his Fifth and Sixth Amendment Rights. We will address each argument in turn.

### A.  Knowing and Voluntary Guilty Plea

Hernandez asserts on appeal that he did not knowingly and voluntarily plead guilty, and that the district court violated Federal Rule of Criminal Procedure 11(b)(1)(G) by failing to adequately assess his ability to understand Count One of the Indictment. As Hernandez never sought to withdraw his guilty plea in the district court, we review his claim for plain error and ask whether: (1) an error occurred; (2) it was plain; (3) it affected the defendant's substantial rights; and (4) it seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *United States v. Pineda-Buenaventura*, 622 F.3d 761, 770 (7th Cir. 2010) (internal citations omitted).

Hernandez argues that he lacked both the education and language fluency necessary to understand the nature of his conspiracy charge. In order to determine whether a defendant understood the nature of a charge, we take a totality-of-the-circumstances approach and consider: (1) the complexity of the charge; (2) the defendant's intelligence, age, and education; (3) whether the defendant was represented by counsel; (4) the district judge's inquiry during the plea hearing and the defendant's own statements; and (5) the evidence proffered by the government. *United States v. Bradley*, 381 F.3d 641, 645 (7th Cir. 2004).

First, the charges in this case were relatively straight forward and Hernandez signed his Petition to Enter a Plea of Guilty which detailed each count. Count One charged

Hernandez with conspiring with Vasquez to possess and distribute cocaine. Counts Two and Three charged Hernandez and Vasquez with possessing and intending to distribute cocaine. Next, although Hernandez has had little formal education (eight years of schooling in Mexico), he is forty-years old, able to read and write in Spanish, and was provided with the services of an interpreter to communicate with the court and his attorneys, who represented him throughout the proceedings. Finally, the district court conducted a thorough inquiry into Hernandez's understanding of all aspects of his guilty plea, and when Hernandez expressed confusion regarding pleading to one charge rather than three, the district court stopped the proceeding and gave Hernandez the opportunity to speak again with his attorney regarding the charges. After Hernandez conferred with his counsel, the district court read all of the charges contained in the indictment, Hernandez acknowledged he discussed these charges with his attorney, and that he wished to plead guilty to all three charges. Finally, the government provided a proffer of the evidence it would have introduced at trial. The district court asked Hernandez if the government's summary was correct and if he committed the crimes as described, Hernandez answered in the affirmative, and pleaded guilty to each of the three charges in the indictment.

Hernandez's reliance on *United States v. Pineda-Buenaventura*, 622 F.3d 761 (7th Cir. 2010) is misplaced. The defendant in *Pineda-Buenaventura* repeatedly denied that he had an agreement with others to distribute drugs, and the district court found that it could not "clearly determine what acts [the defendant] admitted." *Id*. at 775. That is not the case

here. The record shows that Hernandez knowingly and voluntarily pleaded guilty. The district court conducted a thorough plea colloquy, ensuring that Hernandez was provided an interpreter at every stage of the proceeding, advised Hernandez of his rights, ensured that he understood them and that he was fully aware of the nature of the charges, the consequences of his plea, and the possible punishment. Accordingly, we reject the argument that Hernandez did not knowingly and voluntarily plead guilty.

### B. Increase in Offense Level Based Upon Drug Quantity Finding

Hernandez next argues that the district court committed clear error by crediting the testimony of a cooperating witness in finding that Hernandez's conduct involved more than 150 kilograms of cocaine. The quantity of narcotics that the district court attributes to the defendant for sentencing purposes is a finding of fact that we review for clear error. *United States v. Conteras*, 249 F.3d 595, 602 (7th Cir. 2001).

Hernandez argues that the district court erred when it relied on Rodriguez's inconsistent testimony. We disagree. Whether or not to believe Rodriguez's testimony called for a credibility determination that the district court was uniquely situated to make. *See United States v. Conteras*, 249 F.3d 595, 602 (7th Cir. 2001). The district court was satisfied that Rodriguez provided truthful testimony, which was corroborated by additional evidence, including the large amount of cash and cocaine found at Hernandez's residence during his arrest, confirming that he was a large quantity drug trafficker. While we do find it odd that Agent Heatherman was allowed to offer

his opinion as to what Rodriguez meant by being "present" at the quarry, we also find nothing in the record that casts such significant doubt on Rodriguez's testimony as to have precluded the district court from relying on it. *See United States v. Woods*, 148 F.3d 843, 847 (7th Cir. 1998).

### C. Mandatory Minimum Sentence Enhancement

Hernandez's final argument is that his Fifth and Sixth Amendment rights were violated when the district court found facts that increased the amount of cocaine Hernandez was responsible for from 500 grams to 150 kilograms. As Hernandez failed to assert this claim in the district court, our review is limited to plain error. *United States v. Johnson*, 680 F. 3d 966, 973 (7th Cir. 2012) (internal citations omitted).

Hernandez pleaded guilty to conspiring with his co-defendants, and knowingly and intentionally possessing with intent to distribute 500 grams or more of cocaine, in violation of § 841(a). As a result, Hernandez faced a five-year mandatory minimum sentence under § 841(b)(1)(B)(ii)(II). Hernandez's PSR, which the district court adopted, however, calculated his criminal activity and relevant conduct to involve more than 150 kilograms of cocaine. Hernandez contends that when the district court found him responsible for 150 kilograms, his Fifth and Sixth Amendment rights were violated in the wake of *Alleyne v. United States*, – U.S. – ,133 S. Ct. 2151, — L.Ed.2d — (2013). In *Alleyne*, the Supreme Court held that "any fact that increases a mandatory minimum sentence is an 'element' that must be submitted to the jury." *Id*. at 2155. Therefore, a district court errs when it makes a judicial finding of fact that increases

the statutory mandatory minimum sentence facing a defendant.

In this case, there is no indication in the record that the district court judge thought he had to impose a higher mandatory minimum sentence as a result of finding Hernandez responsible for a larger amount of cocaine than his charging document attributed to him. Hernandez's PSR said the mandatory minimum he faced was five years and the district court judge repeated that fact multiple times during Hernandez's sentencing hearing. Even though the district court found Hernandez responsible for 150 kilograms or more of cocaine for Sentencing Guidelines calculation purposes, that finding did not affect the statutory mandatory minimum that he faced, which is governed by the charging document. As Guidelines ranges are only advisory, the Fifth and Sixth Amendment requirements do not apply. *See*, *e.g.*, *U.S. v. Abdulahi*, 523 F.3d 757, 760-61 (7th Cir. 2008); *U.S. v. Thomas*, 446 F.3d 1348, 1355 (7th Cir. 2006); *U.S. v. De la Torre*, 327 F.3d 605, 611 (7th Cir. 2003). We see no *Alleyne* error here, and accordingly decline to remand for resentencing.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM.