In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-1811

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ARTURO VALDEZ,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 12 CR 96 — **Amy J. St. Eve**, *Judge.*

ARGUED NOVEMBER 19, 2013 — DECIDED JANUARY 13, 2014

Before POSNER, SYKES, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Arturo Valdez pled guilty to possessing heroin with intent to distribute. See 21 U.S.C. § 841(a)(1). He admitted responsibility for 700 grams of heroin, but in applying the Sentencing Guidelines, the district court held him accountable for more than three kilograms of the drug. The court imposed a within-guidelines sentence of 140 months in prison. On appeal Valdez challenges his sentence, arguing that the court's drug quantity finding violated his Fifth

and Sixth Amendment rights, that the finding was based on unreliable evidence, and that the court failed to address an argument he made in mitigation against undue reliance on drug quantity. We affirm.

I.   *Factual Background*

In February 2012 Valdez received a call from a government informant who said only that he wanted some "China." Valdez understood this was a request for one kilogram of heroin and agreed. The next day Valdez paid a friend $500 to drive him to pick up heroin from his supplier. He then told the informant that he would be in the alley behind the informant's home in a few minutes. When Valdez arrived at the informant's home, police saw him get out of the car carrying a shoe box. Valdez saw the police and fled but was apprehended within moments. The shoe box contained approximately 500 grams of heroin.

Valdez pled guilty to possessing heroin with intent to distribute and admitted responsibility for a total of 700 grams of the drug. Valdez was informed in his plea agreement and at the plea colloquy that, given the amount of heroin he acknowledged, he faced a statutory minimum of five years in prison and a statutory maximum of forty years. See 21 U.S.C. § 841(b)(1)(B)(i).

For purposes of the Sentencing Guidelines, however, the government contended that Valdez was responsible for between three and ten kilograms of heroin. The probation officer agreed, assigning a base offense level of 34 in the presentence report. See U.S.S.G. § 2D1.1(a)(5), (c)(3). In support of the higher drug quantity, the government offered summa-

ries by DEA agents of statements given by Valdez and the informant.

According to the agents, Valdez was read *Miranda* warnings after his arrest and agreed to cooperate with law enforcement. He admitted selling one kilogram of heroin per week during the previous two months and said that he had expected to sell the informant a kilogram of heroin for $56,000 the day of his arrest. When the agents told Valdez that the shoe box contained only half that amount, he agreed to call his supplier to discuss the discrepancy. The supplier acknowledged that the package was short on quantity but told Valdez that he had given him all the heroin he had at the time. The informant told the DEA agents that he had made three purchases from Valdez, each of one kilogram of heroin for approximately $55,000 per kilogram.

At sentencing, Valdez objected to the drug quantity calculation, and although he did not testify, he denied having ever made statements to the DEA agents. Valdez challenged the probation officer's reliance on the DEA reports, pointing out that neither the agents nor the informant testified at the sentencing hearing and the statements were merely summaries that were not corroborated by any controlled buys. Anticipating the Supreme Court's decision in *Alleyne v. United States*, 133 S. Ct. 2151 (2013), and arguing for an even broader holding, he also argued that the government should be required to prove beyond a reasonable doubt the drug quantity used under the Sentencing Guidelines. He also argued that the district court should not rely as heavily on drug quantity as the Guidelines advise because quantity is not a reliable indicator of culpability.

The district court overruled Valdez's objection and adopted the drug quantity recommended by the presentence report. The court found that Valdez in fact gave the statement, which was corroborated by his understanding of the informant's request for "China" and his supplier's willingness to admit that he had shorted Valdez. Both facts indicated ongoing relationships dealing with large amounts of heroin. The court also found that the informant's statement provided further corroboration as it revealed similar drug quantities and price.

II. *Analysis*

We consider first the argument that the district court violated the defendant's Fifth and Sixth Amendment rights by finding facts that increased the amount of heroin he was responsible for under the Guidelines from 700 grams to more than three kilograms. Valdez bases this argument on *Alleyne*, which held that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury" and proved beyond a reasonable doubt. 133 S. Ct. at 2155. The amount of heroin Valdez admitted responsibility for established a statutory minimum of five years. See 21 U.S.C. § 841(b)(1)(B)(i). Because the quantity found by the district court would support a statutory minimum of ten years, see *id.*, § 841(b)(1)(A)(i), Valdez says, the court ran afoul of *Alleyne*.

There is no indication, however, that the district judge thought her sentencing discretion was cabined by a higher statutory minimum than the five-year minimum supported by the 700 grams of heroin charged in the indictment and admitted by Valdez. Thus, Valdez's position is foreclosed by *United States v. Hernandez*, 731 F.3d 666, 672 (7th Cir. 2013).

Valdez suggests that we read *Alleyne* as overruling the remedial holding of *United States v. Booker*, 543 U.S. 220, 245 (2005), and require all drug quantity determinations under the now-advisory Sentencing Guidelines to be submitted to a jury. We decline. The Court in *Alleyne* specifically noted that its ruling "does not mean that any fact that influences judicial discretion must be found by a jury." 133 S. Ct. at 2163. There is no conflict with *Booker*. The district court did not err by calculating a greater drug quantity solely for purposes of determining Valdez's Guideline range without requiring proof beyond a reasonable doubt or a jury finding or admission. See *United States v. Claybrooks*, 729 F.3d 699, 708 (7th Cir. 2013). Absent such an extension of *Alleyne*, Valdez cannot prevail on his argument that a more demanding standard of proof was required. See *United States v. Mitchell*, 635 F.3d 990, 993 (7th Cir. 2011); *United States v. Pira*, 535 F.3d 724, 728 (7th Cir. 2008).

Valdez next contends that the district court erred by considering unreliable evidence—the statements by Valdez and the informant recounted in the DEA agents' reports—when making its drug quantity finding. He describes these statements as unreliable because they were not recorded or signed and because neither the agents nor the informant testified at the sentencing hearing. Valdez cannot establish clear error based on the fact that neither the DEA agents nor the informant testified at the sentencing hearing. See *United States v. Vaughn*, 722 F.3d 918, 932 (7th Cir. 2013) (district court could rely on reliable hearsay in making drug quantity finding); *United States v. Maiden*, 606 F.3d 337, 339 (7th Cir. 2010) (district court could use reliable hearsay to make findings under Sentencing Guidelines).

In this case, the statements were sufficiently reliable. They were consistent and corroborated one another. Both statements indicated repeated dealings in kilogram quantities of heroin for similar prices. And the informant knew that Valdez did not have a driver's license and knew the identity of the friend Valdez hired as a driver. Finally, the statements were also corroborated by Valdez's understanding of the code word "China" and his familiarity with the informant's home. The district court reasonably relied on these statements in support of its drug quantity finding. See *United States v. Artley*, 489 F.3d 813, 821 (7th Cir. 2007).

Valdez argues also that the district court committed a procedural error by failing to address his argument at sentencing that no empirical evidence supports a link between the quantity of drugs involved in an offense and a defendant's culpability. After properly calculating the applicable Guideline range, a sentencing judge may disagree with the Guidelines' advice but is not required to do so. See *United States v. Corner*, 598 F.3d 411, 416 (7th Cir. 2010) (en banc); *United States v. Huffstatler*, 571 F.3d 620, 623 (7th Cir. 2009). And as a general rule, a sentencing judge must address a defendant's principal non-frivolous arguments in mitigation. See *United States v. Marin-Castano*, 688 F.3d 899, 902 (7th Cir. 2012); *United States v. Pulley*, 601 F.3d 660, 667 (7th Cir. 2010). We have made clear, however, that where a defendant raises such a sweeping challenge to a Guideline provision as the use of drug quantity to help gauge culpability, the sentencing judge need not engage the argument as might be needed with a more specific challenge to how the Guideline provision applies to the particular defendant. See *United States v. Schmitz*, 717 F.3d 536,

541–42 (7th Cir. 2013); *United States v. Garthus*, 652 F.3d 715, 721 (7th Cir. 2011); *United States v. Aguilar-Huerta*, 576 F.3d 365, 367–68 (7th Cir. 2009). There was no procedural error.

AFFIRMED.