NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 26, 2014
Decided March 27, 2014

**Before**

DIANE P. WOOD, *Chief Judge*

DIANE S. SYKES, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 12-3717

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 10 CR 608-4 |
| RAMON CALDERON, *Defendant-Appellant.* | Samuel Der-Yeghiayan, *Judge*. |

**O R D E R**

An informant negotiated with Francisco Arroyo to sell four kilograms of cocaine in exchange for $114,000. At the agreed time and place, Jose Covarrubias and Jorge Vasquez arrived with the money to take delivery of the cocaine. Instead they were arrested by FBI agents, who seized the cash and a car equipped with a hidden compartment. Authorities traced the car to Ramon Calderon, who had reported it missing three days after the arrests. The FBI investigation then expanded to include Calderon, and months later he told other informants in a conversation captured on video that he had gathered "a hundred" to buy "coke" and even supplied his modified car for the failed drug purchase.

Calderon, Arroyo, Covarrubias, and Vasquez were charged with conspiring and attempting to possess cocaine with intent to distribute. *See* 21 U.S.C. §§ 846, 841(b)(1)(B). Calderon and Arroyo were tried together. Calderon was found guilty by the jury, and Arroyo was acquitted. The district court calculated a guidelines imprisonment range of 121 to 151 months for Calderon and sentenced him to 121 months. He filed a notice of appeal, but his appointed attorney asserts that the appeal is frivolous and seeks to withdraw under *Anders v. California*, 386 U.S. 738 (1967). Calderon opposes counsel's motion. *See* CIR. R. 51(b). We confine our review to the potential issues identified in counsel's facially adequate brief and Calderon's response. *See United States v. Schuh*, 289 F.3d 968, 973–74 (7th Cir. 2002).

As the case proceeded to trial, Calderon disrupted the proceedings with baseless jurisdictional claims common among the "sovereign citizen" movement. Although represented by appointed counsel, he filed numerous pro se submissions insisting that he was a "secured party creditor" over whom the district court lacked jurisdiction. During courtroom appearances he refused to approach the podium when his case was called, and he frequently interrupted the judge and his own lawyer by talking loudly from the back of the courtroom. His disruptions led the judge to remove Calderon from the courtroom and revoke his pretrial release.

This pattern continued on the day jury selection began. Before the prospective jurors entered the courtroom, Calderon interrupted the prosecutor. He also said that his appointed lawyers were not his attorneys and interrupted one of them to assert that counsel could not speak for him because "I am here as a secured party creditor." The district court, recalling Calderon's disruptions during the pretrial proceedings, told him that his interruptions were prejudicial to himself and to his codefendant. The judge went on to explain that further disruptions would lead to Calderon's exclusion from the courtroom, but even while that warning was being delivered the defendant interrupted the judge four more times. The judge then offered Calderon an opportunity to promise that he would end his disruptions, and when Calderon refused to do so, the judge ordered security officers to remove him from the courtroom. *See* FED R. CRIM. P. 43(c)(1)(C) (providing that defendant waives right to remain present at trial "when the court warns the defendant that it will remove the defendant from the courtroom for disruptive behavior, but the defendant persists in conduct that justifies removal from the courtroom"); *Illinois v. Allen*, 397 U.S. 337, 343 (1970) ("[T]rial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case."); *United States v. Benabe*, 654 F.3d 753, 769–72 (7th Cir. 2011) (explaining that defendants waived right to be present at trial

"through their tandem campaign of obstreperous interruptions and frivolous legal arguments"); *United States v. Sterling*, 738 F.3d 228, 233, 236–37 (11th Cir. 2013) (explaining that defendant waived right to be present at trial by responding with "nonsensical phrases" to court's warning to end courtroom disruptions). The court told the jury that Calderon had been excused from attending trial for reasons unrelated to the case and set up a live video feed so that Calderon could follow the proceedings from another courtroom and confer with his lawyers. The court also informed Calderon that he could return if he would promise to end his disruptions.

During the two-week trial, the jury watched the video of Calderon telling the FBI informants how he gathered "a hundred" (including $20,000 each from four others) to buy the "coke" and then lost the money and his car. Calderon said the car had a "stash" in the trunk and added that he protected himself afterward by telling police that his mechanic had taken his car. Likewise the jury heard recordings of Arroyo's phone conversations with the informant arranging the deal on behalf of a buyer with "a hundred," and saw phone records showing that Calderon had made more than fifty calls to codefendant Vasquez on the day he and Covarrubias were arrested. The parties stipulated that Covarrubias and Vasquez had $111,800 and the keys to Calderon's car. Agents showed a video of the hidden compartment in the trunk of Calderon's car and explained that these compartments are used to hide drugs during traffic stops. An agent also said that the street price of cocaine was about $25,000 per kilogram at the time of the failed deal. The government introduced Calderon's police report asserting that Vasquez, whom he described as his mechanic, had taken his car to make repairs but never returned it. Agents testified that Calderon repeated the same story to them when they interviewed him at his house two months after the police report was filed. They added that Calderon had denied knowing about a hidden compartment in his car and denied losing a large sum of money. Calderon's lawyers did not object to the admission of any of this evidence. The district court denied Calderon's motion for a judgment of acquittal. *See* FED. R. CRIM. P. 29(c).

At sentencing Calderon apologized for disrespecting the district court, saying that he had been "brainwashed" and "misled" by members of the sovereign-citizen movement after his arrest. The parties agreed that Calderon's criminal history score was I and his base offense level 30 (because the intended quantity of cocaine was between 3½ and 5 kilograms, *see* U.S.S.G. § 2D1.1(c)(5)), but they disagreed whether the court should add two levels for obstruction of justice, *see id.* § 3C1.1. The government sought the adjustment based on Calderon's lies to FBI investigators and also described in its version of the offense how Vasquez recounted that Calderon had approached him two

months after the failed drug deal and told Vasquez that if he forgot about Calderon's car, then Calderon would forget about everything else. Calderon did not dispute these facts, but he argued that his police report and lies to the FBI did not burden government resources or obstruct the investigation, and that his statements to Vasquez did not suggest that he was threatening him. The district court sided with the government, concluding that Calderon had intentionally impeded the drug investigation by lying to the FBI agents and also had tried to influence Vasquez, the purported "mechanic," to corroborate his false story of the stolen car.

In his *Anders* brief, counsel first analyzes whether Calderon could challenge the sufficiency of the evidence and concludes that this potential claim would be frivolous. Calderon disagrees with counsel's assessment, contending in his Rule 51(b) submission that the evidence demonstrated, not a conspiracy, but a buyer-seller relationship between himself and the seller. We agree with counsel. It is true that a routine buyer-seller relationship does not establish that the buyer and seller conspired to distribute drugs. *See, e.g., United States v. Brown*, 726 F.3d 993, 998–99 (7th Cir. 2013). But the government never charged Calderon with conspiring with the *seller* (who happened to be an informant). Rather, Calderon was charged in a conspiracy involving others who were helping him *buy* cocaine, and the prosecutor introduced evidence that Calderon had gathered enough money to buy four kilograms of cocaine and also provided a car with a hidden compartment to facilitate the purchase. We have explained that evidence of pooling money and sharing resources is sufficient to show that a defendant sought to further the objectives of a conspiracy. *See United States v. Martin*, 618 F.3d 705, 737 (7th Cir. 2010); *United States v. Harris*, 567 F.3d 846, 851 (7th Cir. 2009).

Counsel next considers whether Calderon could dispute the two-level upward adjustment for obstruction of justice and properly concludes that this challenge would be frivolous. Given the district court's factual finding that Calderon lied to FBI agents to obstruct their investigation and also tried to encourage codefendant Vasquez to withhold truthful testimony, we would find no error in the court's application of the guideline. We have explained that obstruction of justice includes lying in order to thwart an investigation, *see United States v. McKinney*, 686 F.3d 432, 437–38 (7th Cir. 2012); *United States v. Pellmann*, 668 F.3d 918, 926–27 (7th Cir. 2012); *United States v. Powell*, 576 F.3d 482, 498 (7th Cir. 2009), as well as coaxing witnesses or codefendants to present a consistent cover-up, *see United States v. Sandoval*, 668 F.3d 865, 870–71 (7th Cir. 2011); *United States v. Strode*, 552 F.3d 630, 634–35 (7th Cir. 2009); *United States v. House*, 551 F.3d 694, 699–700 (7th Cir. 2008). In his Rule 51(b) response Calderon asserts that he would argue on appeal that the district court's application of this upward adjustment is

inconsistent with the Supreme Court's recent decision in *Alleyne v. United States*, 133 S. Ct. 2151 (2013). But the guideline provision affected only his advisory range, so this challenge would be frivolous. *See id.* at 2163; *United States v. Hernandez*, 731 F.3d 666, 672 (7th Cir. 2013).

Counsel finally evaluates whether Calderon could challenge his prison sentence as unreasonable and again concludes that this potential claim would be frivolous. We agree. The district court considered Calderon's arguments in mitigation and decided that 121 months is the appropriate sentence given his lack of prior convictions yet apparent familiarity with the drug trade. Counsel has not identified any ground to rebut the presumption that this term is reasonable, *see Rita v. United States*, 551 U.S. 338, 347 (2007); *United States v. Jones*, 696 F.3d 695, 700 (7th Cir. 2012), nor can we.

The motion to withdraw is GRANTED, and the appeal is DISMISSED.